## COUNTY OF LANCASTER v. HUGH R. FULTON.

ERROR TO THE COURT ⸢OF COMMON PLEAS OF CHESTER COUNTY.

Argued February 15, 1889—Decided October 7, 1889.
[To be reported.]

1. The prosecution before the proper officers of the commonwealth of a claim by a county to an allowance for over-payments of taxes into the state treasury, is within the sphere of a county solicitor's duties, as defined by a statute providing that he shall be the legal adviser of the county commissioners and shall represent them in all proceedings in law or equity, wherein the county is a party or has any interest.

2. A contract, made by the commissioners of a county, to give to the county solicitor, whose salary is fixed by law, an additional compensation for services to be rendered by him, lying within the sphere of his official duties as prescribed by a statute, is ultra vires. Being, in its effect, evasive and subversive of law and contrary to public policy, it is void irrespective of intent, and is therefore incapable of ratification after the expiration of the solicitor's term.

3. In an action to recover for services under such a contract, the contract itself being declared on and the evidence showing that the services of the plaintiff were all rendered under it, no recovery can be had, notwithstanding that these services were not completed during the plaintiff's official term, and were principally rendered after its expiration, with the knowledge and assent of the county commissioners.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 122 January Term 1889, Sup. Ct.; court below, No. 76 January Term 1888, C. P.

On August 4, 1887, Mr. Hugh R. Fulton brought assumpsit against the county of Lancaster to No. 93 August Term 1887 of the Court of Common Pleas of said county, and on the same day filed the following statement of claim:

" The plaintiff's demand in the above case is founded upon a contract entered into by and between the plaintiff and defendant, by which the plaintiff agreed to collect from the commonwealth of Pennsylvania all overpaid taxes on personal property

then due, and the defendant agreed, by its representatives, S. M. Myers, Abram Summy, and Martin Hildebrand, its county commissioners, to pay the said plaintiff the sum of twenty-five per centum upon the amount or amounts which might be credited to the county in its account with the commonwealth; which contract was reduced to writing and adopted by resolution of said county commissioners of Lancaster county, and placed upon the minutes of said board, of June 28, 1882, of which resolution the following is a copy:

" ' Resolved, That H. R. Fulton, Esq., be and he is hereby appointed attorney for the county, to take proceedings to obtain credit for the county, in its account with the commonwealth, for all overpaid taxes on personal property; Mr. Fulton's compensation is to be twenty-five per centum upon the amount or amounts which may be credited, and is to be in full settlement for all costs and expenses as well as of fees.'

" By which agreement and resolution the said defendant assumed to pay the plaintiff twenty-five per centum for all sums recovered by credit settlement to the county of Lancaster by the commonwealth, for overpaid taxes due at that time.

" In pursuance of said agreement and resolution, the plaintiff, after five years of work, labor and great expense, and the professional services of himself and associate counsel, procured a credit settlement in favor of the county of Lancaster, the above defendant, in its accounts with the commonwealth, of $20,823.50 of overpaid tax on personal property included in the terms of said contract, said credit settlement being settled and entered in the office of the auditor general of Pennsylvania on April 30, 1887, and in the office of the state treasurer of Pennsylvania on June 16, 1887, which certificate was duly presented by the plaintiff to S. M. Myers, John Gingrich, and H. F. Hartman, Esquires, the county commissioners of Lancaster county, on June 20, 1887.

" That on said credit settlement of $20,823.50, the compensation due the plaintiff, for services, associate counsel fees and expenses, as specified by said agreement and resolution, is the sum of $5,205.87 which sum is now due the plaintiff, with the interest thereon from June 20, 1887, and which sum the defendant has agreed and assumed to pay to the plaintiff."

Charge of Court below.

To this statement of claim the defendant pleaded, non-assumpsit.

On December 12, 1887, the court on application of the plaintiff awarded a change of venue to Chester county, in pursuance whereof the record was filed in the Court of Common Pleas of the latter county at No. 76 January Term 1888, and the case came on for trial therein November 12, 1888, when the following facts were made to appear:

In the county of Lancaster, the county solicitor is elected by the people once in every three years, in accordance with the provisions of the act of February 18, 1870, P. L. 160, which act provides that the salary of said officer shall be $500 per annum, and that he shall be the legal adviser of the board of commissioners of Lancaster county, and shall represent the said board in all proceedings in law or equity wherein the said county is a party or has any interest. Under this act the plaintiff was elected county solicitor in the fall of 1879 and served as such from January, 1880, until January, 1883. While so serving he entered into the contract with the commissioners of Lancaster county embodied in their resolution as quoted in his statement of claim. Acting under this contract, he proceeded to render the services it provided for, and continued therein after the expiration of his official term. In 1884 he obtained for the county a credit of $2,560 for over-payments of taxes into the state treasury, for which service he was paid by the county commissioners $640, being twenty-five per cent thereof. He still continued to prosecute the claim of the county for a further allowance of credit, and in June, 1887, a credit was allowed it for $20,823.50. All his services in connection with this claim were rendered under and in pursuance of his original contract with the commissioners.

At the conclusion of the testimony the court, FUTHEY, P. J., overruled a motion for a compulsory nonsuit and, after fully reviewing the testimony as to the nature and extent of the services rendered by the plaintiff, charged the jury as follows:

The commissioners say in answer to this claim, that Mr. Fulton was the solicitor of the county, duly elected in pursuance of an act of assembly which provides for the election of a county solicitor; that under the act of assembly he received a salary

Charge of Court below.

for his services as such solicitor, and that he is therefore not entitled to recover anything from the county for his services; that it was against the policy of the law for the commissioners to enter into such an agreement with the county solicitor, and that therefore there can be no recovery thereunder. Now, we say to you that if these services had been rendered by Mr. Fulton while he was county solicitor, this position would have been true. The act of assembly provides that the county solicitor shall be elected. He is an officer elected by the people for the purpose of representing the county in any matter requiring legal advice or the services of counsel, and his compensation is fixed by the act of assembly. If, therefore, these services had been rendered while he was county solicitor, he would not have been entitled to recover beyond the amount fixed by the act of assembly, except for necessary expenses incurred by him; it would have been proper to have paid those.

This agreement, however, was entered into in the latter part of June, 1882, and Mr. Fulton went out of office on the first of the next January. Now, it was within the power of the county to employ counsel for the purpose of endeavoring to recover the amount which the county thus claimed to be due it, at such reasonable sum as would be proper for the amount of labor and professional assistance rendered for the county. [If, after Mr. Fulton ceased to be county solicitor, and for years endeavored to collect the claim, and eventually succeeded, then it would be a ratification of the agreement which had been entered into while he was county solicitor, and he would be entitled to recover a reasonable compensation for the entire services which he thus rendered, commencing when the agreement was entered into in June, 1882.] [9] [Did the county thus ratify the agreement which they had made with Mr. Fulton, so far as his separate employment to collect these moneys was concerned?] [10] [There is testimony that on various occasions the county recognized him as an attorney specially employed for the collection of these moneys.] [11] In 1884, a year after Mr. Fulton had ceased to be the authorized attorney of the county under his election, and when another was occupying that position, [he collected from the state the sum of $2,560. Upon this being credited to the county, the county recognized Mr. Fulton as their attorney in this matter, and settled with him

on the basis of the agreement which had been entered into,] [12] paying him twenty-five per cent of that amount, and at the same time they talked over the matter and the commissioners concluded that they were entitled not only to the sum thus paid by the state, but to the whole balance of their claim, and under this conversation Mr. Fulton went on in the service of the county. [Again, when the appeal was taken by the county commissioners from the action of the authorities at Harrisburg to the Dauphin county court, which as I understand was after he had ceased to be the authorized solicitor of the county generally, he was authorized by the commissioners to take that appeal, and by their action in this respect they again recognized him as counsel of the county specially employed for this purpose.] [13]  In addition to that, there is testimony that when Mr. Fulton had occasion to go to Harrisburg upon this business, that on at least one occasion he was accompanied by the county commissioners.  He testifies, as I understand, to that fact.  In addition to that, when the accounting officer wrote to Mr. Fulton from Pottstown that he rejected the claim, and when Mr. Fulton again had an interview with him at Harrisburg and the claim was again rejected by him, as I understand, Mr. Fulton, feeling that he was right and that the county was entitled to this credit, made a re-examination of the facts and got up another petition for a revision, which was signed by all the county commissioners; an affidavit was signed by the county treasurer; an affidavit was signed by the president of the board of commissioners, and armed with these papers he again went to Harrisburg, and then it was that he finally succeeded in convincing the authorities that the county of Lancaster was entitled to these moneys.

This was in 1887, and you will see that as late as that year when the final battle for these moneys, if I may so term it, was to be fought, the county commissioners recognized Mr. Fulton as their attorney, by all of them signing the petition which he had prepared, embracing the facts in the case as they understood them, and by the president of the board of commissioners making the affidavit.

There is probably other testimony bearing upon the subject. I simply advert to this to call your attention to the facts showing that, from time to time, after Mr. Fulton's term of office

Charge of Court below.

had expired, he not only endeavored to collect these moneys, but that he went on with the sanction of the county commissioners, they recognizing him as their attorney specially employed for this purpose. [If, after his term expired, he rendered these services with their sanction and approval, it was a recognition of the employment which they had made in June, 1882, and would entitle the plaintiff to recover whatever his services would be reasonably worth.] [14]

This agreement not only employs Mr. Fulton, but fixes his rate of compensation at twenty-five per cent, that to cover all the expenses which he might incur in the matter. [We say to you, that while the county had authority to employ Mr. Fulton, and that if they recognized this agreement after the confidential relation had ceased between him and the county, they would be bound by it so far as his employment was concerned] [15] they would not be bound by the rate of compensation which was fixed, but the jury would have the right to say what amount should be paid to Mr. Fulton for those services and expenses. That may be twenty-five per cent, or it may be any other sum which the jury may find to be due him for these services. [There seems to be no room for any question that his services were thus recognized and repeatedly recognized, on until the final conclusion of the matter. Then what rate of compensation should he receive? These services were professional in their character. Mr. Fulton was a member of the bar, and as such he was employed, and whatever those services are reasonably worth, considering the character in which he was employed or engaged, he would be entitled to recover.] [16]

A number of witnesses have been called for the purpose of showing to the jury what would be a reasonable compensation for those services. The plaintiff claims that he should have one fourth of the amount recovered. This is the amount named in the agreement, but you will fix his compensation without reference to that. Several of the witnesses testified, after hearing Mr. Fulton's statement of the services which he rendered, and basing their estimate upon that, that twenty-five per cent would be a reasonable compensation for his services and expenses. Others were called who had not heard Mr. Fulton testify, and what is termed a hypothetical question was put to them, embracing what the plaintiff said were the facts

in the case, and they were asked, assuming those to be the facts, what amount it would be proper to pay, and basing their answer upon the hypothetical question thus put, they said that twenty-five per cent would be a fair compensation. In judging of the testimony of these witnesses, of course you will consider whether the hypothetical question embraced a fair and reasonable statement of the facts in the case. If the jury find that it did, then they will consider the testimony of these witnesses as bearing upon the amount of compensation.

I should say what was upon my mind, but I omitted it in passing, that you have the deposition of the accountant of the department, who finally adjudged this sum of money to Lancaster county, and who had rejected the claim. He says that it was through the efforts of Mr. Fulton that success was finally obtained by the county of Lancaster; that he had presented the claim; that it had been rejected on several occasions, and that the efforts made by him, the arguments made by him, and the facts produced by him finally satisfied the authorities that he was entitled to this money, and that credit was therefore due to Mr. Fulton for the final success which crowned the efforts of the county to obtain the repayment of this tax.

When you have ascertained the sum which Mr. Fulton is fairly entitled to receive, and it may or may not be twenty-five per cent of the amount recovered, you will render him a verdict for that amount with interest from the time this final settlement was made, June 18, 1887. Although the settlement is dated in April by some arrangement of the authorities in Harrisburg, yet the actual allowance was made, I think, June 18, 1887, or about that time. The amount upon which fees are now claimed is $20,823.50.

The defendant requests me to charge you as follows:

1. The contract of June 28, 1882, given in evidence by the plaintiff, having been made between the plaintiff and the commissioners of Lancaster county, when the plaintiff was a public officer, solicitor of Lancaster county, an office to which he was duly elected in pursuance of an act of assembly, at a salary of $500 a year, is contrary to public policy and null and void, and no recovery can be had by the plaintiff for any services rendered by him in pursuance thereof.

2. The said contract of June 28, 1882, given in evidence by

the plaintiff, was contrary to public policy and void, and there can be no recovery by the plaintiff in this action for services rendered under or in pursuance of said contract, whether said services were rendered while the plaintiff held the office of solicitor of Lancaster county, or after the expiration of his term of office.

Answer: I have probably fully answered these points in what I have said in the general charge. I may simply repeat what I have already said, that if the services of Mr. Fulton had been rendered while he was county solicitor, then there could have been no recovery. But, as the services were rendered largely after he was solicitor under his election, if the county commissioners recognized his services after that time, and he went on under the employment, after his term of office expired, that would be a ratification by the commissioners of the agreement made by Mr. Fulton with them, and Mr. Fulton would be entitled to recover whatever reasonable amount the jury may find to be due him for the services rendered, and for the expenses incurred.[17]

3. There is no evidence in this case from which the jury can imply any contract on the part of the defendant to compensate the plaintiff for any services rendered by him, or for any expenses incurred, or payments made by him.

Answer: This point is disaffirmed. There is evidence upon that subject.[18]

4. Under all the evidence in the case, the verdict should be for the defendant.

Answer: This point is disaffirmed. The questions of fact are for the jury, under the instructions which I have already given you.[19]

The jury returned a verdict in favor of the plaintiff for $5,083.54. Judgment having been entered thereon, the defendant took this writ, specifying that the court erred:

1–8. These assignments of error were in the form following :*

1. The court erred in admitting the following question, put

---

*Observe that the assignment does not show the bill of exceptions sealed, the testimony admitted under the offer, or the substance thereof: See Battles v. Sliney, 126 Pa. 460.

by the plaintiff's counsel to plaintiff when on the stand as a witness:

" Q. Please state to this court and jury what, in your judgment, apart from this contract, would be a fair compensation to you for the services that you rendered and the expenses that you incurred in collecting this claim for the county? "

9–16. The parts of the charge embraced in [ ] [9 to 16]

17. The answer to plaintiff's first and second points.[17]

18, 19. The answers to the defendant's points.[18] [19]

*Mr. E. K. Martin* and *Mr. H. M. North* (with them *Mr. George A. Lane*, County Solicitor, *Mr. A. F. Schenck* and *Mr. Samuel D. Ramsey*), for plaintiff in error:

1. The contract set up by plaintiff in his statement of claim as the basis of his action, was an agreement by public officers to appropriate public money to another public officer for services he was bound by law to perform for a salary fixed by law. It was therefore contrary to public policy and void: Chester Co. v. Barber, 97 Pa. 455; Geiser v. Northampton Co., 20 W. N. 259; Hays v. Oil City, 35 Pittsb. L. J. 117; Smith v. Whildin, 10 Pa. 39; 1 Wharton on Cont., §§ 403, 500, 502; Mercer Co. v. Patterson, 2 R. 106, 108. The ruling of the court below, that if the commissioners recognized the plaintiff's employment after he went out of office, it was a ratification of the prior contract and plaintiff could recover for all services rendered under it, was error, because, being a legal fraud and contrary to public policy, it was incapable of confirmation: Chamberlain v. McClurg, 8 W. & S. 31, 36; Negley v. Lindsay, 67 Pa. 217; McHugh v. Schuylkill Co., 67 Pa. 391; Miller's App., 30 Pa. 478; Shisler v. Vandike, 92 Pa. 447; Seylar v. Carson, 69 Pa. 81; 1 Whart. Cont., § 288; Hunter v. Nolf, 71 Pa. 282.

2. The plaintiff's testimony shows that all his services were rendered under this express agreement. Therefore, there could be no implied promise to pay for them; Duncan v. Keiffer, 3 Binn. 126; Hertzog v. Hertzog, 29 Pa. 465, 468; 2 Wharton on Cont., § 707. Nor will a promise be implied against a county the same as against an individual. County commissioners are creatures of statute, with their powers and mode of procedure defined by law: § 19, act of April 15, 1834, P. L.

541; Vankirk v. Clark, 16 S. & R. 286; Pike Co. v. Rowland, 94 Pa. 238; Dauphin Co. v. Bridenhart, 16 Pa. 458; Close v. Berks Co., 2 Wood. Dec. 453; Jefferson Co. v. Slagle, 66 Pa. 202; Wayne Co. v. Waller, 90 Pa. 99; Argenti v. San Francisco, 16 Cal. 255; Dillon, Mun. Corp., § 384. Even if the plaintiff were allowed to recover, the questions permitted to be put to him and his witnesses respecting the value of his services were improper as relating to all the services connected with the claim, part of which were rendered while he occupied the position of county solicitor. Besides, all these questions to the plaintiff and to experts as to the value of the services included services in attempting to procure legislation. For such there can be no recovery: Clippinger v. Hepbaugh, 5 W. & S. 315; Filson v. Himes, 5 Pa. 452; Hatzfield v. Gulden, 7 W.- 152; Bowman v. Coffroth, 59 Pa. 19; Ashburner v. Parrish, 81 Pa. 52.

*Mr. W. U. Hensel* and *Mr. J. Hay Brown* (with them *Mr. W. T. Fulton*), for defendant in error:

1. The commissioners of the county are the proper authorities to look after its financial affairs, protect its rights and collect its claims, and have authority to make contracts for such purposes. Their acts within the scope of this authority are binding on the county: Grove v. Lampeter Tp., 8 W. 125; Vankirk v. Clark, 16 S. & R. 289; Hunter v. Albright, 5 W. & S. 423; Jefferson Co. v. Slagle, 66 Pa. 202; Schwamble v. The Sheriff, 22 Pa. 19; Dauphin Co. v. Bridenhart, 16 Pa. 461; Hamilton v. Lycoming Ins. Co., 5 Pa. 345; Dillon, Mun. Corp., § 229; Luzerne Co. v. Day, 23 Pa. 143. The act of 1870 fixing the salary of the county solicitor of Lancaster county does not prohibit the employment by the commissioners of additional counsel: Smith v. Mayor of Sacramento, 13 Cal. 533. Does it, then, prohibit their paying extra compensation to their own solicitor when he performs extra and unusual services? Chester Co. v. Barber, 97 Pa. 455, does not answer this. But, admitting for argument's sake that the commissioners could not contract to pay for services rendered by plaintiff, during his term of office, in any "proceeding in law or equity" wherein the county was a party or interested, these services were not rendered in such a pro-

ceeding in law or equity as the act of 1870 contemplates. Public officers are not bound to perform duties, outside their regular official duties, without compensation: Evans v. Trenton, 4 Zabr. 765; Bright v. Supervisors, 18 Johns. 242; Mallory v. Supervisors, 2 Cow. 531. There was no fraud, concealment, or bad faith here, and therefore Seylar v. Carson, Negley v. Lindsay and like cases, cited by plaintiff in error, have no application. But, even if fraudulent and void as against public policy, the contract, having been ratified, renewed and carried out, is now binding on the parties: Fox v. Cash, 11 Pa. 211.

2. Allowing for argument's sake that the original contract was void, and that the plaintiff could not recover anything on it, or directly or indirectly receive anything beyond his salary while holding office, a ratification or renewal of the agreement, or a new contract, after his term expired, would not be illegal. The court below expressly directed the jury to disregard the contract. Leaving it entirely out of consideration, we find the plaintiff acting for the county after his official term had expired, with the knowledge and approval of the commissioners. On his securing a credit of $2,560, they accepted the fruits of his labor, owned him as their attorney, and agreed on a standard of compensation by paying him 25 per cent of the amount recovered. How could there be a more distinct contract with him than these circumstances imply? If it was not a renewal, revival, ratification or resurrection of the contract of 1882, then it was a new contract and bound the commissioners thereafter. If there was no contract, then the commissioners recognized his right to recover on a quantum meruit. Where valuable services are rendered with the consent and under the authority of the beneficiary of them, the law implies a contract to pay a fair compensation: Hertzog v. Hertzog, 29 Pa. 465, 468. This is as true of public corporations as of individuals: Dillon, Mun. Corp., §§ 385, 386, 399. On the subject of contingent fees, see Perry v. Dicken, 105 Pa. 89; Strohecker v. Hoffman, 19 Pa. 223; Kennedy's App., 4 Pa. 149; Stanton v. Embrey, 93 U. S. 548; Wright v. Tebbitts, 91 U. S. 253; Trist v. Child, 88 U. S. 450; Wylie v. Coxe, 56 U. S. 415.

OPINION, MR. JUSTICE STERRETT:

In his statement and affidavit of claim, plaintiff below avers that his demand is founded on a contract between himself and the county commissioners, dated June 28, 1882, by which he agreed to collect from the commonwealth all overpaid taxes on personal property then due; for which services the county, by its commissioners, agreed to pay him twenty-five per centum on the amount or amounts which might be credited to it in its account with the commonwealth; that said contract was evidenced by a resolution, adopted and entered on the minutes of said commissioners, as follows:

"Resolved, That H. R. Fulton, Esq., be and he is hereby appointed attorney for the county, to take proceedings to obtain credit for the county in its accounts with the commonwealth for all unpaid taxes on personal property: Mr. Fulton's compensation is to be twenty-five per centum upon the amount or amounts which may be credited, and is to be in full settlement for all costs and expenses as well as of fees."

That, "in pursuance of said agreement and resolution the plaintiff, after five years of work, labor and great expense, . . . . . procured a credit settlement in favor of the county . . . . . in its accounts with the commonwealth, of $20,823.50, of overpaid taxes included in the terms of said contract," etc.; and the plaintiff's compensation for services, etc., as specified in said agreement and resolution, is $5,205.87, which sum is now due him with interest thereon from June 20, 1887.

In substance, the defence interposed by the county was, that at the time the resolution of June 28, 1882, was adopted, plaintiff below "was the duly elected and qualified solicitor" of the county, serving under the act of February 18, 1870, at a salary of $500 fixed by that act; and, for that reason, neither he nor the county commissioners had any power or authority to enter into the contract, under which the services were rendered, and on which the claim is founded.

It is conceded that when the contract was made and for a considerable time thereafter, plaintiff below was the duly elected and qualified solicitor of the county. The 4th section of the act under which he was elected, declares: "The salary of the officer, elected as hereinbefore provided, shall be five hundred dollars per annum, payable quarterly; and the officer

so elected shall be the legal adviser of the board of commissioners of Lancaster county, and shall represent the said board in all proceedings in law or equity wherein the said county is a party or has any interest." He was undoubtedly a public officer within the meaning of the constitution, article III., § 13, and article XIV., §§ 1 and 5, the first of which declares: "No law shall extend the term of any public officer or increase or diminish his salary or emoluments, after his election or appointment."

The services for which the contract in question undertakes to provide, are clearly within the sphere of the duties of the "solicitor of Lancaster county," as defined by the act of February 18, 1870. He "shall be the legal adviser of the board of commissioners of Lancaster county and shall represent the said board in all proceedings in law or equity wherein said county is a party or has any interest." What authority, then, had either the plaintiff below, or the county commissioners, to enter into a contract to compensate the former for services within the sphere of his duties as solicitor of the county? We are of opinion that they had none; that the act of the commissioners in undertaking to bind the county to pay the compensation provided for in the contract, was ultra vires. Doubtless the very object of the act in creating the office of county solicitor, providing for his election and fixing his salary, etc., was to take the power out of the hands of the county commissioners and place it beyond their reach. But be that as it may, we think the contract was ultra vires and void, and that the first and second points for charge submitted by defendant below, should have been affirmed. Those points are as follows:

"1. The contract of June 28, 1882, given in evidence by the plaintiff, having been made between the plaintiff and the commissioners of Lancaster county, when the plaintiff was a public officer, solicitor of Lancaster county, an office to which he was duly elected in pursuance of an act of assembly at a salary of five hundred dollars a year, is contrary to public policy and null and void, and no recovery can be had by the plaintiff for any services rendered by him in pursuance thereof."

"2. The said contract of June 22, 1882, given in evidence by the plaintiff, was contrary to public policy and void, and there can be no recovery by the plaintiff in this action for ser-

vices rendered under and in pursuance of said contract, whether · said services were rendered while the plaintiff held the office of solicitor of Lancaster county, or after the expiration of his term of office."

These points were answered together by the learned judge as follows : " I have probably fully answered these points in what I have said in the general charge ; I may simply repeat what I have already said, that if the services of Mr. Fulton had been rendered while he was county solicitor, then there could have been no recovery ; but, as the services were rendered largely after he was solicitor under his election, if the county commissioners recognized his services after that time, and he went on under their employment after his term of office expired, that would be a ratification by the commissioners of the agreement made by Mr. Fulton with them, and he would be entitled to recover whatever reasonable amount the jury may find due him for the services rendered and for the expenses incurred."

In the ninth to sixteenth specifications, inclusive, the subjects of complaint are certain portions of the general charge. These specifications of error present substantially the same questions that are involved in the foregoing points and the answer thereto, and hence they do not require separate or special consideration.

In saying, as he correctly did, that if the services of plaintiff below " had been rendered while he was county solicitor, then there could be no recovery," the learned judge rightly assumed that the contract in question was unauthorized and illegal. All such contracts, whether intended to be so or not, are in effect evasive and subversive of law, contrary to public policy, and therefore void. They are no more capable of ratification than was the contract in Hunter v. Nolf, 71 Pa. 282. Speaking of the illegal contract under consideration in that case, Mr. Justice SHARSWOOD said : " It is undisputed law that such a contract is illegal as against public policy, and cannot be enforced. Even if there had been an express contract on entirely different terms than those agreed upon before, it ought to be viewed with a considerable degree of suspicion as an attempt to evade a sound and salutary rule of public policy."

A case more nearly parallel with this, in some of its features,

is Chester County v. Barber, 97 Pa. 455. Barber, one of the plaintiffs below, was attorney for the county of Chester, but it did not appear whether he was serving under an annual salary fixed by act of assembly, or under a special agreement with the commissioners. The county commissioners, however, made a contract with him and two other attorneys to pay them fifty per centum of the amount they recovered from the state for taxes improvidently paid into the state treasury. Speaking for the court, the present Chief Justice said : " The commissioners had no power to bind the county by such a contract. . . . . It was against public policy, and therefore null and void. . . . . These commissioners were acting in a fiduciary character. They were but trustees of the money when received, for the use of the county. When, therefore, they contracted to give one half of it to the plaintiffs for their services they exceeded their power. They were giving what did not belong to them. As well might a trustee contract to give away one half of the trust estate as compensation to counsel for services in connection therewith. And, if he may give away one half, why not three fourths, or even a greater proportion ? Can it be doubted that a court of equity would strike down such a contract as improvident and a legal fraud ? . . . . Whether the plaintiff, Barber, can recover anything, will depend upon the terms of his previous engagement as solicitor to the commissioners."

If it had appeared in that case that Barber was acting under a salary, fixed by act of assembly (as was Mr. Fulton in this case), and that his defined duty was to act as the legal adviser of the commissioners and represent them in all proceedings at law or in equity wherein the county had any interest, it is not likely that any doubt as to his legal status would have been suggested. According to the reasoning of the opinion, the contract as to him would have been declared illegal, contrary to public policy, and absolutely void. We are, therefore, of opinion that the learned judge erred in holding that plaintiff below might recover, if the commissioners recognized his services after the expiration of his term of office as county solicitor ; that such recognition would be a ratification of the original illegal agreement, etc.

Plaintiff's statement of claim avers, and his own testimony proves most conclusively, that all the services for which he

claims to recover compensation were rendered under and in pursuance of the original illegal contract. In his cross-examination he said, in substance, that all he did was in pursuance of the contract. " I commenced under this contract." " I never rejected the contract, as a matter of course." " I continued in this service, beginning on this contract." " I went on under this contract," and many similar expressions in his answers to questions put to him on cross-examination.

There is no pretence that any new agreement was entered into, or the terms of the original in any manner changed after the expiration of his term of office. Neither the subject of a new contract nor the modification of the original ever appears to have been considered by the parties. The services of plaintiff below were no doubt efficient and valuable ; but, so far as they were rendered during his term of office, his salary is all the compensation he can claim. As to services rendered after the expiration of his term of office, under and in pursuance of the original illegal and void contract, he cannot, under the pleadings and evidence in this case, recover. The ninth to nineteenth assignments of error, inclusive, are sustained. The first to eighth assignments are immaterial; but, aside from that, they are not according to rule, and therefore not entitled to any consideration.

Judgment reversed.

Mr. Justice MITCHELL dissented.