# R. McCLOSKEY ET AL. v. J. POWELL ET AL.

APPEALS BY PLAINTIFFS AND DEFENDANT FROM THE COURT OF COMMON PLEAS OF FOREST COUNTY.

Argued October 6, 1890—Decided January 5, 1891.
[To be reported.]

1. One who, claiming and asserting ownership, sells certain specified timber trees standing upon land which in fact does not belong to him, and

Statement of Facts.

distinctly authorizes their removal from the land, will be liable as a co-trespasser with his vendee for a subsequent cutting and removal of the timber by the latter, in consequence of such sale and authority, and without the consent of the real owner.

2. In such case, the liability of the vendor of the timber will extend to the measure of damages prescribed by act of March 29, 1824, 8 Sm. L. 283, to wit, treble the value of the timber cut and removed, although he neither participated in person in such cutting and removal, nor employed the laborers who did it: McCloskey v. Powell, 123 Pa. 62, re-affirmed; but such statutory damages do not bear interest prior to their recovery.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

Nos. 32, 165 October Term 1890, Sup. Ct.; court below, No. 1 December Term 1883, C. P.

On September 24, 1883, Robert McCloskey and A. B. Reid brought trespass q. c. f., to recover for the cutting of timber trees, under the act of March 29, 1824, 8 Sm. L. 283, against J. H. Ryder, James N. Scatcherd, John N. Scatcherd and Jerome Powell. The defendants, Ryder and Powell, appeared and pleaded not guilty; the other defendants were not served.

At the second trial on December 23, 1886, a verdict was rendered for the plaintiffs for $4,350.61, single damages, against J. H. Ryder alone. Judgment having been entered on the verdict, the plaintiffs took a writ of error to No. 206 October Term 1887, Sup. Ct.; and on January 7, 1889, said judgment was reversed with an award of a venire facias de novo: McCloskey v. Powell, 123 Pa. 62. On February 11, 1889, an application for a re-argument was refused.

At the third trial on September 17, 1889, the plaintiffs presented testimony substantially the same as that given upon the former trial as reported in 123 Pa. 62. It was to the effect, in brief, that in 1880 the defendant Ryder, as the agent of the Scatcherds, who resided at Buffalo, N. Y., and there did business as Scatcherd & Son, was negotiating with Powell for the purchase of a tract of timber land in Elk county, bounded on the west by the Forest county line, and in the negotiation informed Powell that unless certain cherry timber was within the lines of his land, Scatcherd & Son would not desire to purchase; that Powell then procured a survey to be made by one Dixon (or Dickson) which included said cherry timber as a

Statement of Facts.

part of his tract, and gave Ryder a draft thereof, whereupon a contract in writing was entered into by which Powell sold to Scatcherd & Son all the merchantable cherry, ash, poplar and cucumber timber upon his land, as described by the warrant numbers, said timber to be cut and removed by the vendees within three years from the date of the agreement, and to be paid for according to an estimate of the quantity, in the tree, to be made by arbitrators within sixty days from said date; that Powell caused the timber to be estimated up to the western line run by the surveyor, and caused the line so run to be pointed out to Ryder as the western boundary of his land; that in 1882–1883 Ryder, acting for Scatcherd & Son, cut the cherry timber aforesaid and removed the most of it from the ground, and Powell received the contract payments therefor as they became due; and that said cherry timber was in fact not on Powell's land, but was in Forest county, on land belonging to the plaintiffs.

Powell testified, on his own behalf, that after the making of Dixon's survey, the witness consulted one Caldwell, a surveyor well acquainted with ancient surveys in that locality, and was informed by Caldwell that the line adopted by Dixon was the true one, and that the witness acted in good faith, in reliance upon what Caldwell said. Certain facts were in evidence, which, the plaintiffs claimed, showed that Powell did not in good faith make a diligent effort to find the correct line.

Testimony for the defendants tended to show that on December 6, 1883, before the return day of the summons in this case, the plaintiffs assigned the claim in suit to one Hodge, whose wife was a relative of the Scatcherds, in consideration of $9,500 paid to them by him, with an agreement that the plaintiffs would prosecute the action to final judgment, and the moneys that might be recovered therein should be applied first to the expenses of the litigation, and second to the repayment to Hodge of the $9,500 by him paid to the plaintiffs, and interest thereon; and that any residue should be divided equally between the plaintiffs and Hodge. The latter was examined as a witness by the defendants upon a commission, and testified that the consideration of the assignment made to him by the plaintiffs, was paid with money belonging to himself, but his testimony and that of other witnesses exhibited certain circumstances from

which the defendants asked the jury to infer that the assignment was made to him, not in good faith, but as the mere cover of Scatcherd & Son; that the money paid for it was furnished by and belonged to them, and that the suit was prosecuted for their benefit.

At the close of the testimony, the court, BROWN, P. J., charged the jury in part as follows:

[We say to you, if the evidence satisfies you that Powell did cause the west line of his land to be run so as to include the timber in dispute, purposely or innocently, when in fact it was within the lines of the plaintiffs' land, and caused the line so run to be pointed out to Ryder as his line and estimated the timber to that line, and that by reason of such acts of Powell, Ryder, acting for Scatcherd & Son, cut timber up to that line, and Powell received pay for the timber so cut, then Powell is liable as a co-trespasser with Ryder, and the verdict should be against both defendants, unless there are other facts appearing in the evidence, to which I will call your attention hereafter, that would defeat a recovery in this suit.] [5] . . . . .

The defendants say that if Powell and Ryder were trespassers, as claimed by the plaintiffs, in cutting the timber, that Scatcherd & Son, under whose direction and for whom Ryder cut the timber, were co-trespassers with Ryder and Powell, and are legally responsible to the plaintiffs to the same extent that Powell and Ryder are liable. That Scatcherd & Son were such co-trespassers with Powell, seems to be clearly established by the evidence, and we do not understand it to be disputed by the plaintiffs. . . . .

This brings us to a very material question of fact, to which your careful attention is called, because it is for you to settle from the evidence; viz., was the assignment by the plaintiffs to Hodge, and the contract made, a bona fide purchase by Hodge? The plaintiffs claim that it was. The defendants claim that it was not. The defendants claim that the evidence shows that it was not; that these writings, although in form in the name of Hodge, were in fact made for and on behalf of Scatcherd & Son; that Hodge was the mere cover to the transaction; and that the $9,500, the money paid for the consideration, was the money of Scatcherd & Son, and that this suit is

Charge of Court below.

prosecuted for the joint benefit of the plaintiffs and Scatcherd & Son instead of Hodge. If the evidence satisfies you that the defendants' claim in this respect is correct, then your verdict should be a general verdict in favor of the defendants. As bearing upon this question, it becomes an important question of fact, who furnished the $9,500 that was paid to the plaintiffs. Was it, as testified by Hodge, his own funds, an investment made by him? If so, then there may be a recovery in this suit. Was it Scatcherd & Son's money? If so, then the verdict should be for the defendants. Now, you will see the importance of that question and why you should give it careful consideration. You have heard the comments of counsel upon the transaction through which this assignment was made to Hodge, and what is claimed by the defendants, that Hodge's name was used as a mere cover for Scatcherd & Son; and what is claimed on the part of the plaintiffs, that it was an honest bona fide transaction of the transfer of the claim in suit to Hodge. It is for you to determine from the whole evidence what was the real fact in the case.

The court is requested by the plaintiffs to charge:

1. If the jury believe from the evidence that the defendant Powell procured the west line of his lands to be so run and marked as to include some two hundred and sixty acres of land belonging to the plaintiffs, and caused the hard-wood timber on his said lands to be estimated up to said line, and caused said line so run and marked to be pointed out as his line to J. H. Ryder, acting for Scatcherd & Son, to whom he, Powell, had sold said hard-wood timber, and that said purchasers accordingly, by reason of said acts of Powell, cut the timber up to said line, and paid him stumpage for the timber so cut on plaintiffs' land, he, Powell, would be liable to the plaintiffs as a co-trespasser with the party or parties who actually cut the timber.

Answer: Affirmed.[3]

2. That under the facts stated in the first point, if found by the jury, the defendant Powell would be liable as therein stated, no matter whether he did or did not know at the time that the line so run and marked encroached on land that did not belong to him.

Answer: Affirmed.[4]

Charge of Court below.

The defendant Powell requests the court to charge:

1. The third section of the act of March 29, 1824, under which this action was brought, is highly penal, and therefore is to be strictly construed, and in construing it the words thereof are to be understood in their ordinary sense.

Answer: Affirmed.

2. If the defendant Jerome Powell did not, in the ordinary sense of the words, either cut down or fell, or employ any other person or persons to cut down or fell, any timber trees growing upon the land of the plaintiffs, there can be no recovery against him in this action.

Answer: Refused.[1]

3. If the defendant Powell did no more than sell the timber growing upon his own tracts, Nos. 2545 and 2517, and mistakenly point out to the purchasers as the lines of his said tracts certain lines which included a part of the plaintiffs' land, and the purchasers entered and cut timber trees upon the plaintiffs' said land, he did not, in the ordinary sense of the words, either cut down or fell the trees so cut by said purchasers.

Answer: Refused.[2]

4. The contract of December 6, 1883, between the plaintiffs and Charles J. Hodge, relating to the prosecution of this suit and division of the moneys sought to be recovered, is champertous; and the court should not lend its aid to the parties thereto in carrying out their unlawful purpose by permitting a recovery in this action against the defendant Jerome Powell.

Answer: Refused.[6]

—The jury found a verdict in favor of plaintiffs and against the defendants for the sum of $2,290.29 made up as follows:

Single value of timber cut and taken away,      $1,600.07
Single value of timber cut and left on the ground,   48.34
Interest to date of verdict,                         641.88

Thereupon, the defendant Powell obtained a rule to set aside the verdict as to the interest included therein, and the plaintiffs obtained a rule for judgment on the verdict for $5,538.77, said sum consisting of treble the value of the timber cut and carried away, double the value of that cut and left on the ground, and the interest as found by the jury.

After argument, the court, BROWN, P. J., filed the following opinion and decree:

Opinion of Court below.

It is plain that the interest included in the verdict was only on the single damages found. Were the jury at liberty to allow the plaintiffs interest, either as such or as damages?

The plaintiffs had their common-law remedy, in which the jury might and should allow interest by way of damages done. They had the remedy prescribed by the act of March 29, 1824, and it was to this they resorted. The declaration is under that act, and the remedy is only such as the act prescribes, viz., the right to double the value of the timber cut down, and treble the value of that cut and converted. The words of the statute impose no liability on the defendant to pay interest, and we think no such liability can be inferred from its terms or its purpose. The act has a double purpose, viz., to punish the wrongdoer and amply compensate the owner. It is highly penal, so far as the wrongdoer is concerned, and, measured by the rules generally applied in suits for damages, it is amply compensatory to the owner for the injury sustained and the delay and expense of litigation, without the addition of interest.

In support of so much of the verdict as is made up of interest, we are referred to the case of Keizer v. Beemer, 12 Cent. R. 492, and, if that can be taken as authority to the extent claimed, it sustains the position of the plaintiffs. In that case, the court below said to the jury, and it was assigned for error, that "should you find in favor of the plaintiff, it would be proper for you to find the amount of the damages and multiply it by three, because the plaintiff is entitled to treble damages; and you may also allow interest from the time of the cutting." To this the Supreme Court, affirming the judgment in a brief per curiam, after speaking of the other assignments, say : " And the third section of the act of March 29, 1824, was properly applied to the case in hand." That it was properly applied, so far as the instruction to multiply the damages by three was concerned, is beyond question ; but we are of the opinion that the case ought not, and was not intended by the Supreme Court, to be taken as authority for the proposition that the act of 1824 authorized the jury to treble the damages and add the interest thereon from the time of the cutting to the time of the verdict. If the case is authority for the allowance of interest on the single damages, it is authority for allowing interest on the treble damage; and thus an act severe in its penalty,

Opinion of Court below.

especially when it is invoked against one who innocently cuts timber on the land of another without the consent of the owner, is made still more severe by construction extra the words of a penal statute. The printed arguments of counsel, in the paperbook before the Supreme Court in Keizer v. Beemer, contain no reference to or argument of the question of interest. Had a question of so much importance been brought to the attention of the court, it appears to us it would have been thought worthy of some comment.

The case of the Dunbar Fur. Co. v. Fairchild, 121 Pa. 564, has no bearing on the question. The declaration was not upon the statute, but at common law. The plaintiff was entitled to single damages, and interest by way of damages, but the verdict aggregated them, so that it was impossible to say how much was damages and how much interest. The court below treated the case as if it was governed by the act of 1824, and entered judgment for three times the amount of the verdict. The Supreme Court say this was error.

The demand for interest in an action brought solely to enforce the remedy provided by the statute, might perhaps have more force, if the act gave treble and double *damages;* for interest is, or may be, an element of damages. But such is not the language. It is a liability to pay double or treble "the value of such tree or trees so cut down or felled." That is to say, a penalty is imposed, to be fixed by the value of the timber cut. The effect of a penal statute is to be limited by the express words employed, and should not be extended by implication; and interest is not given by the act of 1824. If interest is a right incident to a liability for double and treble the value of the timber, as of the date of the cutting, it should be computed upon the entire liability. We fail to see any reason for allowing interest on the single value of the timber cut, that would not be equally applicable to such an allowance on the double and treble value. It is true that, in the case before us, the jury allowed interest only on the single value; but, if the plaintiffs are correct in the present contention, the jury might have allowed interest on the double and treble value.

In support of the rule for judgment, including the interest, the contention seems to be that they should be allowed the interest, the same as if the pleadings were in the form of a

Arguments.

common-law action of trespass, and that such interest should
be added to the remedy given by the act of assembly.   We are
of opinion that interest should not be allowed, either as a mat-
ter of right, or at the discretion of the jury.   If we are wrong,
we are pleased to know that the position of the record is such
that the error can be corrected without a re-trial.

The rule on part of the defendants to set aside the verdict
as to the interest therein is made absolute.   The rule on part
of plaintiffs, except so much as asks the interest found by the
jury to be included in the judgment, is made absolute.   And
judgment is ordered to be entered in favor of the plaintiffs for
the sum of $4,896.89.

Judgment having been entered, the defendant Powell took
the appeal to No. 32, assigning for error:

1, 2. The answers to the defendants' points.[1] [2]

3, 4. The answers to the plaintiffs' points.[3] [4]

5. The part of the charge embraced in [ ] [5]

6. The answer to the defendants' point.[6]

7. The entry of judgment for thrice that part of the verdict
which was for timber cut and removed, and double that part
thereof which was for timber cut and left on the ground.

The plaintiffs took the appeal at No. 165, specifying that the
court erred:

1. In making absolute the rule to set aside the verdict as to
the interest therein.

2. In not including in the judgment the interest found by
the jury.

*Mr. C. Heydrick* and *Mr. George A. Jenks* (with them *Mr.
Carl I. Heydrick*), for Jerome Powell, appellant in No. 32:

1. Our conviction that the ruling in McCloskey v. Powell,
123 Pa. 62, holding Powell responsible for the acts of his ven-
dees, is erroneous, is our apology for presenting the same ques-
tion for reconsideration.   The statute in question is a highly
penal one, and has uniformly been so treated: Wheeler v. Car-
penter, 107 Pa. 271 ; O'Reilly v. Shadle, 33 Pa. 490; Watson
v. Rynd, 76 Pa. 61; Kramer v. Goodlander, 98 Pa. 353 ; Bush
v. Gamble, 127 Pa. 43.   Therefore, although a remedial stat-
ute, in the same sense that any penal statute may be said to be

remedial, it must be construed strictly, and cannot be applied to cases not within its plain letter: Aechternacht v. Watmough, 8 W. & S. 162, overruling Jackson v. Purdue, 3 P. & W. 519; Irish v. Elliott, Add. 238; Gallagher v. Neal, 3 P. & W. 183; Pittsburgh v. Kalchthaler, 114 Pa. 547; Wheeler v. Carpenter, 107 Pa. 271. In the light of these authorities, the act of March 29, 1824, 8 Sm. L. 283, cannot be construed so as to apply to Powell, even though his good faith and the collusion between the plaintiffs and the parties who did the cutting be left out of view.

2. It is not pretended that Powell personally cut the timber. Nor did he cut it by another, within the intendment of the statute. Under the maxim, expressio unius est exclusio alterius, the addition in the act of the words, "or employ any other person or persons to cut down or fell," excludes the application of the principle, qui facit per alium facit per se, to the preceding words, "If any person or persons . . . shall cut down or fell," and limits the operation of the statute to the two cases expressed, to wit, a cutting personally by the hand of the defendant, and a cutting by his employee. The signification of the maxim, qui facit per alium, etc., is that the acts of an agent are the acts of his principal: 2 Bouv. Law Dict., 206; Broom's Maxims, 818; 1 Sharswood's Bl. Com., 429; Story on Agency, §§ 440–452. It has never been applied, so far as a careful research has shown, to the relation of vendor and vendee, except in this case. Nor can it reasonably be applied to such a relation. The vendee is not the agent of the vendor; their relation is antagonistic, and each acts for himself, dealing with the other at arms length.

3. An action of trespass will not lie, upon the act of 1824, against a vendor for the acts of his vendee. The statute provides that the form of the action shall be "trespass or trover as the case may be;" that is, when trespass would lie at common law upon the facts of the case, that shall be the remedy. The word trespass, as the name of an action, has a known technical signification, and it must be presumed that the statute uses it in that sense. Trespass will lie only when the injury is done by the direct act of the defendant; force directly applied is the criterion: 1 Chitty's Pl., 141; Strohl v. Levan, 39 Pa. 177; Allegheny V. R. Co. v. McLain, 91 Pa. 443; Yer-

ger v. Warren, 31 Pa. 321; Phila. etc. R. Co. v. Wilt, 4 Wh. 147. The cutting in this case was a consequence of the erroneous survey and estimate, but it was not the act of Powell, nor had he any control over it. It may be conceded that by the sale he " encouraged the cutting," but the statute does not punish encouraging. It applies only to a personal cutting or the employing others to cut. The statute did not contemplate that a vendor should be liable for a cutting by his vendee, ten, twenty, or fifty years after the sale: Offerman v. Stars, 2 Pa. 396.

4. There was absolute good faith in the sale, on Powell's part, and there was collusion between the plaintiffs and the Scatcherds, resulting in a champertous contract, if not in an accord and satisfaction. It has been said, in this state, that integrity of purpose, honest mistake, or an honest claim under color of title, afford no defence to an action under the act of 1824: O'Reilly v. Shadle, 33 Pa. 489; Watson v. Rynd, 76 Pa. 59; Kramer v. Goodlander, 98 Pa. 353. In each of those cases, however, there were, in the opinion of the court, qualifying expressions or statements of facts which weaken their authority in support of that proposition. And there are other cases, more in harmony with the general spirit of the law, which regards compensation as the measure of damages for accidental trespasses: Bethlehem Water Co. v. Yoder, 112 Pa. 136; Dunbar Fur. Co. v. Fairchild, 121 Pa. 563; Tiernan v. Smith, No. 277 October Term 1881. Similar statutes in other states have uniformly been held not to apply in cases of inadvertent trespass: Whitecraft v. Vandever, 12 Ill. 235; Watkins v. Gale, 13 Ill. 152; Russell v. Ireby, 13 Ala. 131; Keirn v. Marfield, 60 Miss. 799; Barnes v. Jones, 51 Cal. 303; Michigan L. & I. Co. v. Deer Lake Co., 60 Mich. 143.

*Mr. B. J. Reid* (with him *Mr. Rasselas Brown* and *Mr. W. C. Rice*), for the plaintiffs, appellees in No. 32 and appellants in No. 165:

1. Granting that the contract between the plaintiffs and Hodge would be held champertous in England and in some states, it is more than doubtful whether it would be so held in Pennsylvania. Champerty is one kind of maintenance, and " in Pennsylvania the English statutes against maintenance

are not in force : " Lewis's Cr. Law, 497.   But, even if it were
champertous, and therefore not enforceable between the par-
ties to it, a third party cannot set it up to defeat a good right
of action against himself: 1 Wharton on Contracts., § 429;
Elborough v. Ayres, L. R. 10 Eq. 367; Whitney v. Kirtland,
27 N. J. Eq. 333; Small v. Railroad Co., 55 Iowa 582; Boone
v. Chiles, 10 Pet. 177; Burns v. Scott, 117 U. S. 582.   But
the question, whose money paid for the assignment, has been
conclusively settled by the jury.

2. Upon the remaining part of the defendant's case, all the
positions here advanced were taken in McCloskey v. Powell,
123 Pa. 62, and we may safely rest upon the convincing opin-
ion in that case.   One matter, however, as it is brought for-
ward more prominently than before, is entitled to some notice, ·
viz., the alleged bona fide claim of right on the part of Pow-
ell.   The view that this would be a defence under the act of
March 29, 1824, 8 Sm. L. 283, is untenable, under the decisions
of this court.   But, even if it were so, good faith in such a
case requires, as an essential ingredient, reasonable diligence,
which is palpably wanting here ; and moreover, that expres-
sion refers, in the cases where it is used, to possession under a
bona fide color of title, and not merely to a mistake as to bound-
aries : Watson v. Rynd, 76 Pa. 59; Kramer v. Goodlander,
98 Pa. 363; Dunbar Fur. Co. v. Fairchild, 121 Pa. 563; San-
derson v. Haverstick, 8 Pa. 294; O'Reilly v. Shadle, 33 Pa.
489; Keizer v. Beemer, 12 Cent. R. 492.

3. We do not contend that the plaintiffs were entitled to in-
terest in this case as a matter of right, but that the jury might,
if the circumstances justified it, allow interest on single damages
for the delay of six years to which the plaintiffs were subjected
in recovering a final verdict.   It is not in accordance with the
spirit of the decisions, in cases of tortious injuries to property,
that a plaintiff, kept out of his damages for six -years, should
not recover a dollar more than if he recovered a verdict within
a few months after the trespass.   Interest was properly allowed
by the jury, not qua interest, but as an element of compensation:
Richards v. Gas Co., 130 Pa. 37; Watson v. Rynd, 76 Pa. 59;
Penna. S. V. R. Co. v. Ziemer, 124 Pa. 571; Dunbar Fur. Co.
v. Fairchild, 121 Pa. 563; Keizer v. Beemer, 12 Cent. R. 492.
Weir v. Allegheny Co., 95 Pa. 413, is not in point, as the de-

fendant there was not in fault and did not reap the profit of
the tort.

Mr. *C. Heydrick* and Mr. *George A. Jenks* (with them Mr.
*Carl I. Heydrick*), for Jerome Powell, appellee in No. 165:

Interest is never allowed as such upon damages at common
law, but the jury may in their discretion, in determining the
amount requisite to make the plaintiff whole, include interest
by way of damages in an aggregate verdict. The plaintiffs,
in this case, had the option to sue for the common-law measure
of damages, or to claim the statutory measure of damages pre-
scribed by the act of March 29, 1824, 8 Sm. L. 283. But they
cannot have both. The statutory measure, when invoked, takes
the entire place of damages at common law, and neither interest
nor any other increment beyond what the statute allows can
be given: Dunbar Fur. Co. v. Fairchild, 121 Pa. 563; Weir
v. Allegheny Co., 95 Pa. 413. The question of interest on
value was not considered in Keizer v. Beemer, 12 Cent. R. 492;
or, if so, that case was overruled in Dunbar Fur. Co. v. Fair-
child, *supra*.

## NO. 32.

OPINION, MR. JUSTICE WILLIAMS:

This case was here in 1888 on the appeal of the plaintiffs,
and it is reported in 123 Pa. 62. It was again tried in the court
below, and resulted in a verdict in favor of the plaintiffs. It
is now here on the appeal of the defendant, and the same ques-
tion raised in 1888 is once more before us.

An effort was made on the trial to raise another question,
and to defeat a recovery by Hodge, the present owner of the
claim in suit, on the ground that he bought it for Scatcherd &
Son, and with their money. The jury found that he bought
for himself, and with his own money. The alleged facts, on
which his right to recover as owner of the claim was denied,
have fallen out of the case, therefore, and the legal question
has gone with them. We have remaining only the question
which was decided in 1888. What was that question?

An examination of the case as reported in 123 Pa. 66, will
show that, on the trial in the court below, the plaintiffs re-
quested the court to instruct the jury as follows:

"If the jury believe from the evidence that the defendant, Powell, procured the west line of his lands to be so run and marked as to include some two hundred and sixty acres of land belonging to the plaintiffs, and caused the hard-wood timber on his said lands to be estimated up to said line, and caused said line, so run and marked, to be pointed out as his line to J. H. Ryder, acting for Scatcherd & Son, to whom he, Powell, had sold said hard-wood timber, and that said purchasers accordingly, by reason of said acts of Powell, cut the timber up to said line, and paid him the stumpage for the timber so cut on plaintiffs' land, or any portion of it, he, Powell, would be liable to the plaintiffs as a co-trespasser with the party or parties who actually cut the timber."

The court declined so to charge, and said, in substance, that as Powell neither cut the trees down with his own hands, nor paid the wages of those who did, he was not liable under the provisions of the act of 1824. This instruction was assigned for error, and raised the question in the case. The point predicated Powell's liability, not of the illegal acts of his vendees, but of his own illegal acts by which he became a trespasser. These acts, as grouped in the point, were four in number, and may be separately stated as follows:

1. That he procured his west line to be so run and marked as to include two hundred and sixty acres of the plaintiffs' land. This was a breach of the plaintiffs' close, a trespass.

2. That he caused the trees thus wrongfully enclosed to be counted, and their contents estimated as belonging to him. This was an assertion of ownership of the trees belonging to plaintiffs.

3. That he caused the line so run to be pointed out to the agent of Scatcherd & Son as his true line. This was an assertion that they might lawfully enter upon the land under his authority.

4. That he sold the timber so enclosed and estimated to Scatcherd & Son by the thousand feet, board measure, and took his pay for it. This was a clear and distinct authority to Scatcherd & Son to cut down the trees and take them away.

The point asked, if the jury should find from the evidence that the acts enumerated had been done by Powell, and if they should further find that Scatcherd & Son cut and removed the

timber "by reason of said acts of Powell," then the court should instruct them, as matter of law, that he was liable as a co-trespasser. This was the question before us on the plaintiffs' appeal in 1888, and the only question. We held, reversing the court below, that upon the facts assumed in the point the plaintiffs were entitled to the instruction asked for as to their legal effect. The case went back for another trial, which has now been had, and which has resulted in a verdict in favor of the plaintiffs. The defendant appeals, and assigns as error the answer of the court below to the same point, given in accordance with our decision in 123 Pa. 62. We are asked, and are quite willing, to examine and determine this question as an original one. The question is, are the acts enumerated in the point sufficient to make him who does them a principal in the trespass of cutting and removing the trees?

It is the doctrine of the common law that every party to a trespass, whether contributing to the physical force employed or not, is liable to an action of trespass; and the reason given is, because there can be no accessory in trespass, and therefore all who aid, abet, counsel, direct, or encourage are liable as principals: 9 Bac. Abr., 492. The same rule prevails in this country. It is stated in Coats v. Darby, 2 N. Y. 517, in these words: "All who aid, command, advise, or countenance the commission of a trespass by another are liable as if they had committed the tort with their own hands." In Moak's Underhill on Torts, 567, the result of the cases is said to be that the plaintiff is entitled to recover if the evidence shows that the defendant took part in the trespass personally, or that he authorized it. It is not necessary that the authority should be given by the defendant in person; it is enough if it be given by his attorney: Gillingham v. Clark, 1 Phila. 51. The basis of liability is well stated in Green v. Kennedy, 46 Barb. 16, thus: "The direction, suggestion, or encouragement that is given, is adjudged to be part of the act itself," done under such direction, suggestion, or encouragement. Much stronger than the cases now referred to are those that hold that one may become liable for a trespass committed without his knowledge, if he agrees to it and is benefited by it. Such cases are abundant where a landlord is proceeded against for the act of his bailiff; a sheriff or constable, for the act of his deputy; a prin-

cipal, for the act of his agent. Thus, not only accessories before the fact, but accessories after the fact, who are benefited by or in whose interest the act has been done, are liable as principals.

It is urged that, while the rule may be as stated in all actions for tort, yet a different rule must be applied when the plaintiff declares under the act of 1824. But the act of 1824 does not give a new action, but a statutory measure of damages "to be recovered with costs of suit by action of trespass or trover, as the case may be." This action is trespass quare clausum, in which the plaintiffs have declared for double or treble value of the trees as their measure of damages, instead of single value with interest. The trespass complained of is an entry upon the lands belonging to the plaintiffs, and the cutting and removal of their timber trees growing thereon, without their consent. The defendant does not deny that the plaintiffs' close has been entered, nor that the timber trees growing there have been cut and removed without their consent. The only question raised is, who is liable for this admitted trespass? The laborers whose blows felled the trees are liable. Ryder, who hired the laborers and superintended their work, is liable, because he directed the work to be done. Scatcherd & Son, who never saw either the trees or the laborers who felled them, are liable, because Ryder represented them as their agent, and qui facit per alium facit per se. So far, both parties are agreed. The plaintiffs propose to go to the top of this series of connected acts, and hold Powell also liable, because, asserting that they were his own, he sold the timber trees that have been cut and removed to Scatcherd & Son, and distinctly authorized their removal from the land.

To this the defendant objects. His position is that the law of 1824 prescribes against the act of cutting any timber trees, and that of employing any person to cut or fell such trees; that, as a penal law, it must be strictly construed; and that, as he neither wielded the axe, nor paid the wages of those who did, he is not liable. This would be a very strict construction, indeed; so strict and narrow that the criminal courts would not adopt it even in favor of human life. It is well settled that he who counsels, directs, or authorizes the commission of murder is guilty of the crime, equally with him by whom the

fatal blow was delivered. The direction is adjudged to be part of the act itself, and to incur the same degree of guilt, if the act be criminal, and the same degree of civil responsibility, if the act be a trespass merely. If one should go to his neighbor's stable, representing it to be his own, sell the horses standing there, take the price, and require the purchaser to remove the horses within a fixed time, whatever might be said about the criminal character of his conduct, no one would doubt his liability in trespass for the removal of the horses. His sale of them as his own, to be removed, is a clear and direct authority for the act of removal by his vendee, which makes him a principal in the trespass. If, instead of going to his neighbor's stable, he should go to his timber land, and point out a tree or a grove of trees as his own, estimate the contents of the tree or trees, board measure, sell them, take the price, and require them to be removed within a fixed time under penalty of loss of the price paid, such sale is as clear an authority to cut and remove the trees as it would be possible to devise ; and the subsequent removal of them by the purchaser, in consequence of such purchase, would support an action against the seller, not because of the act of his vendee merely, but because of his own acts connecting him with the trespass. We are fully satisfied, after a careful re-examination of the whole subject, that upon the facts embodied in the point the law was correctly given to the jury upon the last trial, and that the error assigned thereto is not sustained.

Much was said upon the argument of this case about the hardship of holding a vendor liable for the unauthorized acts of his vendee. It is enough to say that no such question was before this court in 1888, and no such question is presented now. We have no doubt that an owner who sells his tract by its official description, or its adjoiners, could not be held liable because his vendee might cut over the lines. The vendee must take notice of the lines, and fix their location at his peril. If there are interfering surveys, and one or more of the lines be involved in dispute, the purchaser takes the dispute with the tract, and must wait until it is settled, or be liable in trespass if he gets over the lines. This case presents no such features. The point assumed that the defendant procured a line to be run and marked to enclose his neighbor's trees. Whether

he was misled by his surveyor, or mistook the line, is not important. The fact is that by his positive acts, as assumed and now found by the jury, he misled his vendee. He sold his neighbor's trees as his own, took pay for them, and authorized and required their removal within a fixed time. He cut the trees by means of his sale of them to be cut. His direction and authorization of the act of his vendees is adjudged part of the act itself, and makes him, equally with those whom he directed and authorized, a trespasser.

The judgment is affirmed.

### NO. 165.

OPINION, MR. JUSTICE WILLIAMS:

This appeal, and that of Powell, which we have disposed of by an opinion filed herewith, are from the same judgment. The plaintiffs complain of the ruling of the learned judge of the court below upon the subject of interest. The jury found the value of the timber trees, and computed interest thereon at $641.88. The court directed judgment to be entered for three times the value of the timber, and excluded the interest therefrom. The precise point was ruled in Dunbar Fur. Co. v. Fairchild, 121 Pa. 563, and is clear upon principle. The treble damages are given as a penalty, and we know of no case in which a penalty bears interest until the plaintiff's right to it has been settled by judgment. The learned judge of the court below was right, therefore, in excluding the interest, and entering the judgment for three times the single value of the trees cut and carried away.

The judgment is affirmed.