## Watson *versus* Rynd *et al.*

1. Under 3d sect. of Act of March 29th 1824 (Timber), one cutting timber on another's land and converting it, is liable to treble damages, although done without knowledge that it was not on his own land.

2. The want of the owner's consent creates the liability of the trespasser.

3. It is incumbent on the person cutting, to ascertain where the line was; or to delay cutting until it was settled.

4. O'Reilly v. Shadle, 9 Casey 489, followed.

March 26th 1874. Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Warren county*: Of January Term 1874, No. 203.

This was an action of trespass *quare clausum fregit*, for cutting and carrying away timber and timber trees contrary to the Act of Assembly. The writ was issued February 17th 1871, at the suit of L. F. Watson against Benjamin Rynd and others, under the 3d section of the Act of March 29th 1824, 8 Sm. Laws 283, 2 Br. Purd. 1397, pl. 2. The section enacts "that in all cases where any person * * * shall cut down or fell * * * any timber tree or trees growing upon the land of another, without the consent of the owner, he * * * shall be liable to pay to such owner double the value of such tree or trees * * * or in case of the

[Watson *v.* Rynd.]

conversion thereof to the use of the offender, treble the value thereof, to be recovered with costs of suit, by action of trespass or trover as the case may be."

The plaintiff was the owner of a tract of timber-land in Warren county, being warrant No. 3049. The defendants owned the adjoining tract, warrant No. 2229, also timber-land; in cutting timber on their own land, the defendants went beyond their line and cut timber on the plaintiff's land without his consent and converted it to their own use.

The foregoing facts appeared on the trial, September 14th 1872, before Wetmore, P. J.

The defendants' point and the answer were as follows :—

Point: "If the jury believe that the defendants cut and hauled off the timber claimed in this case, under the honest belief that they were the owners of the land, there can be no recovery for more than the actual value of the timber. It is not a case for treble damages."

Answer : "The point of defendants is affirmed for the reason, the court thinks, that the rule *stare decisis* should prevail in the Court of Common Pleas where it can be done. This view of the Act of Assembly was adopted in a case in this court. Without expressing our own independent opinion we conform to the former decision."

The verdict was for the plaintiff for $225, "*single damages.*"

The plaintiff obtained a rule to show cause why the court should not treble the single damages found by the jury.

The court discharged the rule, saying :—

"We decline to treble the damages found by the jury in this case, for the reason given on the trial in answer to the 1st point of defendants. This is done to preserve consistency in our decisions as applied to the question of damages. Judge Johnson decided, as we are informed, a case in this court and another in Elk county, in accordance with the answer to the first point of defendants."

The plaintiff took a writ of error and assigned for error the answer to defendants' point, and refusing to treble the damages found by the jury.

*W. D. Brown,* for plaintiff in error, cited O'Reilly *v.* Shadle, 9 Casey 489 ; Hughes *v.* Stevens, 12 Id. 320 ; Welsh *v.* Anthony, 4 Harris 254.

*R. Brown,* for defendants in error.—When double or treble damages are awarded by statute it is if the act is wilful: Sedgwick on Damages 455. He cited also Young *v.* Herdic, 5 P. F. Smith 176 ; Craig *v.* Kline, 15 Id. 400.

Mr. Justice GORDON delivered the opinion of the court, May 18th 1874.

[Watson v. Rynd.]

If anything other than the Act of 1824 itself were wanting to show that the court below erred in refusing to treble the damages, found by the jury in this suit, it may be found in the case of O'Reilly *et al. v.* Shadle, 9 Casey 489. In that case it was expressly decided that the want of knowledge on the part of the trespasser did not relieve him from the penalty imposed by the third section of the act. And the intention of the legislature is therein pointed out by calling attention to the significant fact that the words "knowing the same to be growing or standing upon the lands of another person," used in the second section, which makes the cutting of such timber a criminal offence, are omitted in the third section, which provides for the civil remedy alone.

The want of the owner's consent is that which makes this part of the act effective. The significance of this omission is further added to by the wording of the first section of the Act of 1840, wherein the penalties of the third section of the Act of 1824 are extended to "any person or persons who shall purchase or receive any timber tree or trees *knowing* the same to have been cut or removed from the lands of another person without the consent of the owner or owners thereof." Here we see, as it would be obviously unjust to impose a penalty upon an innocent purchaser, the act is operative only where there is knowledge of the guilty cutting or removal of the timber. We may therefore conclude with certainty that these words were intentionally omitted in the third section of the Act of 1824.

The design of the statute was to prevent trespassing upon timber lands, and it has proved itself to be very valuable for that purpose. We do not, therefore, feel ourselves constrained to impair its provisions by any novel construction, and thus unsettle the uniform convictions of the bench and bar with reference to them.

The timber lands of this state have heretofore been regarded as a permanent and secure investment, owing to their steady advancement in value. Hence, the mere price of stumpage has not, as a rule, been regarded as a full compensation to the owner for the loss of his timber. Indeed three times such price will often not more than compensate him for his loss and the vexation and expense of a lawsuit. Beside this, it is in this country, generally supposed that persons have a right to enjoy their honest acquisitions without molestation, and if any one chooses to trespass upon them, he must take the consequences.

In this case it is said that the trespass of Rynd was unintentional; that some one showed him the line run by Ludlow in 1850, as the true line between the two tracts, and being thus misled, he cut to that line. But we do not understand that it was the plaintiff that showed him this line, or that he ever consulted the plaintiff about it. He certainly knew that the line to which he cut was not the warrant line; it was far too young for that. It was his

[Watson *v.* Rynd.]

duty, therefore, to ascertain from the owner of the adjacent tract, whether or not that was the line to which he claimed, and if not, to delay his cutting until the matter could have been properly settled. It seems to us that this is what one, who was anxious about the rights of his neighbor, would have done.

We may here observe, that the cases of Young *v.* Herdic, 5 P. F. Smith 176, and Craig *v.* Kline,. 15 Id. 400, cited by the defendants' counsel, have no bearing upon this case, inasmuch as they involve the common-law rule of assessment of damages, and not that arising under the statute. It follows from what has been said, that the court erred in discharging the plaintiff's rule. The jury having found single damages, the court should have trebled them.

> And now, May 18th 1874, the judgment of the Court of Common Pleas of Warren county is reversed, and judgment is now entered upon the verdict in the sum of six hundred and seventy-five dollars, that being treble the amount of the single damages found by the jury, with interest thereon from the 14th day of September 1872. The record is remitted to said court for execution.