## Kramer, Admr., Appellant, *v.* Pittsburgh Coal Company.

Argued March 27, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*A. R. McGrath,* with him *L. Pat. McGrath,* for appellant.

*R. A. Applegate,* with him *Rose & Eichenauer,* for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, April 14, 1941:

In this action of trespass, originally brought by the wife of appellant, and continued by him as her administrator, recovery is sought for alleged damage to properties belonging to her, caused by dust deposited on and in them, which, it is claimed, originated in, and was blown from, a coal cleaner used in connection with a mine owned and operated by defendant.

The suit was brought in December, 1933. It was not tried until six years later, in December, 1939. This long delay may have given rise to some of plaintiff's difficulties, as no damage subsequent to 1933 was alleged. After a trial lasting for several days, the jury returned a verdict for defendant.

In order to fully understand plaintiff's position before us, it is necessary to turn to the pleadings. Plaintiff did not bring suit for damages resulting from a nuisance in the accepted sense of that word. "The term [nuisance] signifies in law such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions upon use or conduct which the proximity of other persons or prop-

erty in civilized communities imposes upon what would otherwise be rightful freedom. In legal phraseology, the term 'nuisance' is applied to that class of wrongs that arise from the unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, or from his own improper, indecent, or unlawful personal conduct, working an obstruction or injury to a right of another, or of the public, and producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage:" 46 C. J. 645-646. "Nuisance is distinguishable from negligence:" Ibid, 650. "The distinction between trespass and nuisance consists in the former being a direct infringement of one's right of property, while, in the latter, the infringement is the result of an act which is not wrongful in itself, but only in the consequences which may flow from it:" Ibid, 651. As we stated in *Summit Hotel Co. v. National Broadcasting Co.*, 336 Pa. 182, 189, 8 A. 2d 302: "In cases of trespass for nuisance, the person responsible may be unable, no matter how careful, to avoid injury to the lands of another, but, again, he knows that injury may result from the nature of his activities regardless of care. Under such circumstances he also assumes the risk. The responsibility for injury lies in creating or maintaining the harmful condition."

In the statement of claim plaintiff's right of recovery is based entirely upon defendant's negligent operation of a cleaner installed at its mine adjacent to plaintiff's properties. It is set forth that: "Defendant corporation in the operation of its said cleaner negligently and unlawfully permitted many tons of a black and gritty substance, soot, coal dust, dust or other powderous waste matter, each day and night to be emanated from its said cleaner and to be blown into the air." Plaintiff's case, therefore, as originally declared was based upon negligence in operation of the cleaner. On trial, over the objection of defendant, an oral amendment of the

statement of claim was permitted averring "that the defendant *was negligent* in not using the best and most standard means or appliances then on the market for the cleaning of its coal, and, secondly, that the process used by the defendant was not the same kind or character as employed and used in other similar establishments, the said process of the defendant being deficient and inadequate for the purpose intended." It will be seen that by this amendment as well as by the original statement the issue tendered by plaintiff and defendant to the jury was one of negligence.

In the statement of the questions involved on this appeal, appellant queries "Was 'negligence' or 'lack of care', the proper test of liability under the peculiar facts of the instant case, where huge and excessive quantities of dust were cast upon the atmosphere?" To which we must answer that under the circumstances it was, and that the trial judge properly submitted it as the vital question to be determined by the jury, because plaintiff had selected that as the ground for liability. In its opinion on plaintiff's motion for a new trial, the trial judge, writing for the court, says: "At the oral argument [of the motion] plaintiff . . . for the first time, took the position that the case should have been submitted to the jury on the doctrine of absolute liability." The opinion points out that it was then too late for plaintiff to raise this question, even if there were merit in the contention advanced. The point could not be raised for the first time in the motion for a new trial; much less could it be initiated on the oral argument of that motion: *Penna. R. R. Co. v. Pittsburgh,* 335 Pa. 449, 464, 6 A. 2d 907; *Weiskircher v. Connelly,* 256 Pa. 387, 389, 100 A. 965. Plaintiff, having stated and tried his case solely as one of negligence, could not expect to have it passed upon as one of nuisance generally, irrespective of negligence.

Complaint is made that the trial judge erred in charging the jury that other methods or processes for cleaning

coal and preparing it for market could not be taken into consideration by the jury in arriving at a verdict. What the judge actually said was: "The plaintiff has failed to meet the burden of proving that there were other and more effective *appliances* which the defendant could have used than were used at this plant, Mine No. 10. There was some evidence that other *methods* were in use, particularly the wet process, and one or two others, which were described to you here; but in the eyes of the law, as we interpret it, that evidence would not be sufficient to entitle you to say that the defendant company had failed or was negligent in that respect."*

When we turn to the testimony, we think this instruction was proper. M. Parmley, an expert witness called by plaintiff, testified that the pneumatic cleaning process used by defendant was a scientific advance in cleaning over other methods, and that its cleaner was the most modern and up-to-date plant known to science at the time; that it had all of the advantages of all of the previous plants. F. A. Dowling, another expert witness called by plaintiff, said that he knew of no other method of dust-collecting on the market or in use by other bituminous coal mining companies when defendant installed its cleaning system that could eliminate dust.

When we look at the conflicting evidence as to the amount of coal dust distributed by the plant and its effect upon property in the community, it is readily understandable why the verdict was in defendant's favor. Although plaintiff and seven other witnesses testified to the existence of dust in large quantities, eleven witnesses from the vicinity, two of whom were school teachers who taught at a school near defendant's mine, and eight of whom had lived in plaintiff's houses as tenants, said that they suffered no annoyance by reason of dust from the cleaning plant, and that there

---

* Italics supplied.

was no more dirt or dust in the vicinity than would be encountered in any mining community. One real estate agent called by plaintiff was of opinion that the rental value of the properties had been adversely affected by the dust, while two living in, and familiar with, the community testified that the rental value had not been affected by such dust as there was.

It is contended by appellant that the trial judge unfairly impugned the credibility of the administrator plaintiff in the charge, by calling attention to the fact that he had previously brought suit against a local railroad company for injury to these properties during the period in question by dust emitted from its locomotives. Our reading of the record satisfies us that the judge's comments were entirely fair and justified by the testimony. Indeed, the charge in its entirety was a comprehensive and impartial presentation of the case to the jury.

Judgment affirmed.