Biehl, Admr., *v.* Rafferty et al., Appellants.

Argued April 12, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

494

*Carl A. Belin* and *Edward L. Willard,* with them *John J. Pentz,* for appellants.

*John C. Arnold,* with him *Edward T. Kelley, D. Edward Chaplin* and *Dan P. Arnold,* for appellee.

OPINION BY MR. JUSTICE DREW, May 22, 1944:

In this suit in trespass, after a verdict was returned in favor of plaintiff, Administrator of the Estate of Ruth Biehl, deceased, in the sum of $10,876, against three of the defendants, Rafferty, Armstrong and Donahue, and in favor of the fourth defendant, Dunlap, the learned court below, on motion, granted a new trial and refused judgment n. o. v. to the three defendants, and from its action in refusing judgment this appeal was taken.

At the time of this accident, November 14, 1942, Armstrong was the holder of a certificate of Public Convenience, issued by the Public Utility Commission of Pennsylvania, to carry passengers for hire between Emporium in Cameron County and the City of DuBois in Clearfield County. The certificate was operated by Rafferty and the motor bus involved was driven by Donahue.

The decedent, Ruth Biehl, was an employee of the Sylvania Products Company at Emporium. That Saturday afternoon, at about four o'clock, she and some thirty-four other girls, left their employment to go to their

homes in and near DuBois, some fifty miles away, to spend the weekend. They took passage on the bus owned and operated by the three defendants. Ruth was going to DuBois and she paid the fare of eighty cents. At Saint Mary's, thirty-five miles from DuBois, the bus became "disabled" because of engine trouble. A number of the girls, including Ruth, got out of the bus and obtained rides in passing automobiles as far as Hollywood, a village twenty miles from DuBois. Here the bus, having been repaired, caught up with them, and the girls, including Ruth, resumed their passage in the bus toward DuBois. The bus broke down again when about eight miles from DuBois. It was then eight o'clock of a very cold dark night. There was some snow and ice on the cement highway. The bus was due at DuBois at about six P. M. The girls had not had anything to eat for a long time; they were then two hours late and they were in a hurry to get home. A number of them, including Ruth and Violet Bell, who seemed to be more or less her companion, got out of the bus and stood near its left rear end, either intending to solicit a ride from a passing motorist or hoping to be voluntarily picked up by some such person and given a ride into DuBois. There is nothing in the record to show these girls actively solicited a ride.

When the bus stopped, all four wheels were upon the cement highway. The driver, Donahue, got out and examined its position. He then, while steering the bus himself, pushed it over to the side, with the help of some of the girls, until it was in a position where only the left wheels were upon the highway. The bus then, according to the testimony of a number of witnesses, occupied from two to five feet of the highway. The driver sent to DuBois for help. He remained sitting in the driver's seat and made no effort to remove the bus entirely off the highway, or set out "flares". He could easily have done both these things. He testified that all lights on the bus were burning; that the lights on the rear of the bus could be seen from a distance of five hundred feet;

that the highway was straight for a much greater distance both in front and rear of the bus. He said he pressed the stop light with his foot each time he saw a motor car coming towards the bus.

It would seem to have been about ten minutes from the time the bus stopped until this fatal accident. The other defendant, Wilbert Dunlap, a boy seventeen years old, driving his sister's car on his own driver's license, with four other young men in the car with him, all going from Emporium to DuBois, approached the rear of the bus at a speed of thirty-five miles an hour. He testified he did not see the bus at all until he was about one hundred feet from it and that when he was about fifty feet away, he attempted to turn to avoid a collision, but was blinded by the lights of an automobile traveling toward him. Why he had not previously seen this approaching car with its lights on "high beam" he did not say. He did not know whether he saw the two girls or not. The other girl, Violet Bell, saw the Dunlap car approaching and that an accident was imminent and jumped into the ditch at the side of the road and escaped. Ruth Biehl was struck and so badly crushed that she died within an hour. Dunlap's car skidded and turned sideways on the road, and collided with the end of the bus.

Plaintiff charged the three defendants with negligence in failing to remove the bus from the highway, and in failing to place flares as required by law. He charged Dunlap with negligent operation of an automobile, in driving at a rate of speed that was high and excessive under the circumstances, and in driving in such a reckless fashion that he did not have his vehicle under control.

Very shortly after the accident the bus was pushed entirely off the cement highway by Donahue and two men. This showed that it was not only upon the road at the time of the accident but could easily have been removed prior to the accident. It was admitted by Donahue that he had flares in the bus and that he did not put

them out because he thought that the lights on the bus were sufficient. However, shortly after the accident he placed the flares, and this although then the bus was entirely off the highway. Dunlap testified that there were no flares when he approached, and that is admitted by all.

The Vehicle Code of May 1, 1929, P. L. 905, states the law governing the operation of motor vehicles on the public highways, and prohibits the parking or leaving standing of any vehicle on the paved or improved portion of the highway (sub-section C of section 1019), unless "it is impossible to avoid stopping and temporarily leaving such vehicle in such position." The Code requires the setting out of flares under certain circumstances. "Whether the driver of this stalled bus showed due care under the attendant circumstances, whether the evidence supported the averment that defendant's servant permitted the bus to remain where it was without warning (i.e., adequate warning) to vehicles approaching from the rear, were questions of fact for the jury:" *Harkins v. Somerset Bus Co.*, 308 Pa. 109, 115, 162 A. 163.

But the three defendants argue that, regardless of this, plaintiff cannot recover against them because their negligence was not the proximate cause of the accident. They argue that even conceding the bus was carelessly left on the traveled portion of the highway, it was where Dunlap could and should have seen it when he was at least five hundred feet away, and that it took his independent act of negligence to produce the accident. They argue that the position of the bus was a mere circumstance or a condition which existed at the place of the accident, but was not an active or controlling proximate cause.

This Court said in *Kline v. Moyer*, 325 Pa. 357, 363, 191 A. 43, in a well-considered opinion by Mr. Justice HORACE STERN: "It is clear that when an unlighted, parked truck is seen by the operator of an approaching

vehicle, the fact of its being unlighted becomes *thereafter* of legal inconsequence, because the purpose of a light as warning has been otherwise accomplished. If already at that time, by the negligence of its driver, the moving vehicle is in such a position and under such impetus that an accident cannot be avoided, the negligence of the truck owner is as much a proximate cause of the accident as is the negligence of the driver of the car; the negligence of each has contributed to the result. But if, after seeing the unlighted truck, although he would still have been able to guide his car without accident, the driver proceeds in such negligent manner that an accident results, the original negligence of the truck owner has become a non-causal factor divested of legal significance; as to it the chain of causation is broken, and responsibility remains solely with the operator of the moving car. We would formulate the general principle as follows: Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause. Where, however, the second actor does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties." See also *Holstein v. Kroger G. & B. Co.*, 348 Pa. 183, 34 A. 2d 491. Unless the facts are undisputed the question of proximate cause and intervening agency are for the jury: *Murray v. Pgh. Athletic Co.*, 324 Pa. 486, 188 A. 190.

Assuming that the verdict of the jury established the negligence of the three defendants, the sole question is, was that negligence, in whole or in part, a proximate

cause of the accident, or was it "insulated by intervening negligence" of Dunlap. It would seem that this question was answered by the jury in its verdict for Dunlap, if it were not for the fact that the jury disregarded overwhelming evidence against him. Of this the learned court below in its opinion says: "The Jury in this case by its verdict decided that Dunlap, who was the 'second actor' or 'intervening force', was not guilty of negligence, and found in favor of him as a defendant. We are unable to see how the Jury arrived at such a conclusion from the facts and evidence. It was Dunlap's duty to so drive his car as to avoid accident by striking objects within the assured clear distance ahead, and this duty would apply both as to the bus and as to the young woman who was on the highway before he reached the bus. Furthermore, the evidence as to the lights on the bus, even though not the exact type of warning by flares which the statute may have contemplated and even though, as argued by counsel for the plaintiff, they may not have shown clearly that the bus was at a stop on the highway, rather than a moving bus, still imposed a duty upon Dunlap to drive so as not to approach too rapidly in such a way as to have a collision with the rear of the bus. His failure to do so certainly should have convicted him of negligence". It is quite understandable why the court considered the verdict for Dunlap as contrary to the facts. If Dunlap is permitted to escape and a new trial is had as to the other defendants they will be put at a distinct and unfair disadvantage and it is quite possible that justice could not be done under the circumstances. This, for the particular reason, that if the jury should conclude that this accident was caused by the concurring negligence of the driver of the bus and Dunlap, the latter could not be reached and the damages would have to be assessed entirely against the other defendants instead of against all defendants, including Dunlap, if they are all on the record and found guilty of concurrent negligence.

A fair consideration of the testimony, even that of Dunlap alone, leads to the conclusion that his negligent conduct was either the proximate cause of the accident for which he alone would be liable, or, that the accident was caused by the concurrent negligence of himself and Donahue, for which all defendants would be liable. In either event, in the present state of the record, Dunlap should not now be relieved of his responsibility. Justice requires that a new trial be had as to all defendants. And the opinion of the court clearly indicated that the learned trial judge is of the same opinion.

In *Kline v. Moyer,* supra, in which the facts are very similar to those in the instant case, we said there where a new trial had been refused, that the motion must be reinstated and made absolute, even though no appeal had been taken because (p. 365): "Justice would seem to dictate that the parties should be given an opportunity to present the necessary clarifying evidence if obtainable, and the issue be then submitted to the jury under proper instructions. Since, if a verdict is rendered for plaintiffs against both defendants, it should be in the same amount as against both, and since the situation in general requires that their liability be weighed in the same proceeding. . . ."

In *Stone v. Philadelphia,* 302 Pa. 340, 348-9, 153 A. 550, where it was contended the City of Philadelphia had no standing to appeal from the entry of a nonsuit as to the other defendant, we said: "We think, however, as the whole record of the case is in this court, under the broad powers conferred upon us by the Acts of May 22, 1722, 1 Smith's Laws 140, and June 16, 1836, P. L. 785, 'to minister justice to all persons,' we can make such an order as will enable plaintiff to reassert his claim against Leven by moving the court below to take off the nonsuit as to him. Otherwise plaintiff's rights are lost as the time within which he might commence another action has expired."

The order of the court below granting a new trial to defendants Rafferty, Armstrong and Donahue and refusing their motion for judgment n. o. v. is affirmed; and the verdict for defendant, Dunlap, is set aside and a new trial ordered as to him.