Kopka *v.* The Bell Telephone Company of Pennsylvania, Appellant.

Argued October 3, 1951; reargued May 28, 1952. Before Drew, C. J., Stern, Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

reargument refused September 30, 1952.

*Ella Graubert,* with her *Patterson, Crawford, Arensberg & Dunn,* for defendant, telephone company, appellant.

*E. V. Buckley,* with him *Mercer & Buckley,* for plaintiff, appellee.

*Ernest C. Reif,* with him *Dickie, McCamey, Chilcote, Reif & Robinson,* for additional defendant.

OPINION BY MR. JUSTICE HORACE STERN, June 24, 1952:

This litigation involves the question of the right of a possessor of land to recover damages for personal injuries sustained by him in consequence of a trespasser's invasion of his property.

At the request of residents of a township in Indiana County for telephone service the Bell Telephone Company of Pennsylvania, defendant in this suit, had its engineers stake out a line along a road bordering the farm of the plaintiff, Walter V. Kopka.[1] It then proceeded to obtain rights-of-way from property owners along the road upon which the line was to be constructed, but no such right was obtained from the plaintiff.

Under an arrangement between the Company and one Jud Sedwick, additional defendant, the latter proceeded to erect the necessary poles to carry the wires and for that purpose drilled holes, one of which was dug inside the road on plaintiff's property; in this hole there was to be placed an anchor rod supporting a guy wire for bracing one of the poles. The Company had indicated to Sedwick where the holes were to be dug and the poles and anchor rods erected. This particular hole, 6½ feet deep and 17 inches wide, was dug on De-

---

[1] Kopka's wife, Stella M. Kopka, was originally named as a co-plaintiff in the action, but during the trial the court made an order removing her as a party.

cember 19, 1947. Two days later, on the 21st, plaintiff was informed by a neighbor about it and went out to investigate, it having been dug without his permission or knowledge. It was in the latter half of the afternoon of a cloudy day and starting to get dark. While walking around to find the hole plaintiff's left leg slipped into it with the result that he allegedly sustained certain injuries. He testified, although there was strong evidence to the contrary, that there was no mound or ring of dirt thrown up around the hole and that the ground seemed level at that point. The hay field through which he passed he described as being "rough and rolling, grass growed up, kind of spongy and spots of snow around in the fields." Around where the hole was "it was all weeds and briars and whatever it was." Other testimony on behalf of the plaintiff was to the effect that that corner of the field "was left in weeds, briar and morning-glory vines."

Suit was instituted against the Telephone Company in the Court of Common Pleas of Allegheny County. The complaint alleged that defendant had, without plaintiff's permission, trespassed upon his farm and dug a hole there, and that property damage as well as personal injuries to plaintiff resulted from the negligence of defendant in thus trespassing and causing others to trespass on his farm, digging the hole there and leaving it unprotected and without barriers, thereby creating a dangerous trap. Defendant filed an answer denying the acts complained of were done by its agents or employes, but that, on the contrary, the installation of the poles and anchor rods was made by Jud Sedwick, an independent contractor. Defendant brought Sedwick on the record as additional defendant, alleging that any damage done to plaintiff's property or injuries suffered by him were the result of additional defendant's negligence and not that of defendant. Defendant also filed a preliminary objection to the juris-

diction on the ground that an action for trespass to land in Indiana County could not be brought in Allegheny County. The court, without objection from plaintiff, thereupon struck from the complaint "the cause of action for damages to the land." It will be noted that this did not deprive plaintiff of the right to pursue his action for trespass on the land and for any damages recoverable in such an action other than those to the land itself,—in this case an entirely negligible item. Moreover we have held in *Bookwalter v. Stewart*, 369 Pa. 108, 85 A. 2d 100, that an action of trespass on the land may be brought in any county where the defendant can be served; in other words, that it is a transitory action.

The trial resulted in a verdict in favor of the plaintiff and against defendant in the sum of $11,000, and a verdict in favor of the additional defendant. The court overruled defendant's motions for judgment n.o.v. and for a new trial, and ordered that judgment be entered on the verdict, from which judgment defendant now appeals.

It should be immediately obvious that, as far as plaintiff's cause of action was based upon alleged negligence in the failure to cover the hole and erect barriers, the verdict against defendant cannot be sustained. If, as plaintiff claims, Sedwick acted as defendant's agent, there would be a hopeless inconsistency between the verdict in his favor and the verdict against his employer, since, in that event, the latter could be liable only on the principle of respondeat superior; (cf. *Ferne, Admrx., v. Chadderton*, 363 Pa. 191, 195, 196, 69 A. 2d 104, 107). On the other hand, if Sedwick was an independent contractor, it is of course axiomatic that his negligence, or that of his employes, in failing properly to perform the work entrusted to him, could not impose liability upon defendant. Only insofar, therefore, as the action is one for the unauthorized in-

vasion of plaintiff's land—that is, insofar as it is the common law action of *quare clausum fregit*—can plaintiff's recovery therein be justified. Defendant maintains that plaintiff, having chosen to proceed on the theory that defendant was *negligent*,[2] cannot uphold the verdict in his favor on the ground that it was nevertheless justified on a different theory of liability; in support of that argument defendant cites the case of *Kramer, Admr., v. Pittsburgh Coal Company*, 341 Pa. 379, 19 A. 2d 362. There, however, the verdict was for *defendant*, and plaintiff then claimed that the case should have been submitted to the jury on a theory different from, or in addition to, that on which it was presented to them. Here, however, the verdict was for *plaintiff*, and, if the complaint stated a cause of action and the evidence supported the allegations, plaintiff was entitled to recover, whatever the legal theory on which the liability might be based: *Federoff v. Harrison Construction Co.*, 362 Pa. 181, 66 A. 2d 817.

Before considering the question of the liability of a trespasser for personal injuries suffered by the possessor of land as an indirect result of the trespass, there

---

[2] In plaintiff's complaint defendant's trespass is treated as an act of *negligence*, and, curiously enough, counsel for plaintiff persisted throughout the trial and on the present argument to so characterize it. The invasion of plaintiff's land was, in and of itself, an affirmative, intentional act, not a negligent one, even though it may have resulted from a *mistake* on the part of the defendant as to the ownership of plaintiff's property. Even had defendant made the most careful and exhaustive inquiry into that matter before committing the trespass it would nevertheless have made itself liable as a trespasser. Incidentally, it may be noted that there is no evidence in the record of any "negligence" on the part of defendant, since it was not shown what steps were taken, or what additional steps could have been taken, to ascertain the fact of ownership; indeed plaintiff's counsel objected to the introduction of testimony on that subject. Had it been necessary to prove negligence on defendant's part plaintiff's proofs to that end would have been wholly inadequate.

are two relevant legal principles to be borne in mind. The first is that the fact that a trespass results from an innocent mistake and, in that sense, is not deliberate or wilful, does not relieve the trespasser of liability therefor or for any of the results thereof: *Watson v. Rynd*, 76 Pa. 59; *Chase v. Clearfield Lumber Company*, 209 Pa. 422, 58 A. 813. Thus, in Restatement, Torts, §163, comment b, it is said: "If the actor intends to be upon the particular piece of land in question, it is not necessary that he intend to invade the actor's interest in the exclusive possession of his land. The intention which is required to make the actor liable . . . is an intention to enter upon the particular piece of land in question irrespective of whether the actor knows or should know that he is not entitled to enter thereon. It is, therefore, immaterial whether or not he honestly and reasonably believes that the land is his own, or that he has the consent of the possessor or of a third person having power to give consent on his behalf, or that he has a mistaken belief that he has some other privilege to enter." So, in §164 it is said: "One who intentionally enters land in the possession of another without a privilege to do so is liable . . . to the possessor of the land as a trespasser thereon, although he acts under a mistaken belief of law or fact, however reasonable, . . . that he . . . (b) has the consent of the possessor or of a third person who has the power to give consent on the possessor's behalf, . . ." (See also comments a and d).

The second important principle to be noted is that one who authorizes or directs another to commit an act which constitutes a trespass to another's land is himself liable as a trespasser to the same extent as if the trespass were committed directly by himself, and this is true even though the authority or direction be given to one who is an independent contractor: *Allen v. Willard*, 57 Pa. 374, 381; *McCloskey v. Powell*, 123 Pa. 62, 73, 74, 16 A. 420, 422, 423; 138 Pa. 383, 397, 21 A. 148, 149;

*Silveus v. Grossman,* 307 Pa. 272, 278, 161 A. 362, 364. "If, by any act of his, the actor intentionally causes a third person to enter land, he is as fully liable as though he himself enters. Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry, if it be a trespass. This is an application of the general principle that one who intentionally causes another to do an act is under the same liability as though he himself does the act in question": Restatement, Torts, §158, comment i.

The liability of defendant Company for the trespass involved in the digging of the hole on plaintiff's land without his knowledge or consent being thus established, does such liability extend to the personal injuries sustained by him as the result of his falling into the hole? The authorities are clear to the effect that where the complaint is for trespass on land the trespasser becomes liable not only for personal injuries resulting directly and proximately from the trespass but also for those which are indirect and consequential.[3] In Restatement, Torts, §380, it is stated that "A trespasser on land is subject to liability for bodily harm caused to the possessor thereof . . . by any . . . condition created by the trespasser while upon the land *irrespective of whether the trespasser's conduct is such as would subject him to liability were he not a trespasser."* And in comment

---

[3] The learned trial judge erroneously affirmed a point for charge submitted by defendant that "The failure of the Bell Telephone Company of Pennsylvania to obtain a right-of-way over Kopka's property was too remote to be the proximate cause of the accident," and erred also by charging the jury as follows: "Now, that matter of trespass as to the land, that is, the coming onto the plaintiff's land and doing something is a matter that is too remote for your consideration. . . . the evidence of trespass to the land is not for your consideration." That was not only a misstatement of the law in favor of defendant but practically amounted to binding instructions in its favor.

452

c to this section, it is said: "It is, therefore, not necessary to the liability of the trespasser that his conduct should be intentionally wrongful or recklessly or negligently disregardful of the interests of the possessor . . . . Thus, one who trespasses upon the land of another incurs the risk of becoming liable for any bodily harm which is caused to the possessor of the land . . . by any conduct of the trespasser during the continuance of his trespass no matter how otherwise innocent such conduct may be."[4] And in comment f to §163, it is said: "So too, he [a trespasser] is liable for any harm to the possessor . . . if such harm is caused by the actor's presence on the land, irrespective of whether it was caused by conduct which, were the actor not a trespasser, would have subjected him to liability."

The authorities uniformly support the principle thus stated; see, for example: *Troth v. Wills,* 8 Pa. Superior Ct. 1; *Newsom v. Meyer,* 102 Conn. 93, 128 A. 699; *Brackett v. Bellows Falls Hydro-Electric Corporation,* 87 N.H. 173, 175 A. 822; *Ham v. Maine-New Hampshire Interstate Bridge Authority,* 92 N.H. 268, 275, 30 A. 2d 1, 6; *Van Alstyne v. Rochester Telephone Corporation,* 296 N.Y.S. 726; *Keesecker v. G. M. McKelvey Co.,* 141 Ohio St. 162, 170-172, 47 N.E. 2d 211, 215, 216; *Wyant v. Crouse,* 127 Mich. 158, 86 N.W. 527; *Cribbs v. Stiver,* 181 Mich. 82, 147 N.W. 587; *Bouillon v. Laclede Gas Light Co.,* 148 Mo. App. 462, 129 S.W. 401.

---

[4] The Restatement gives the following illustration of the principle enunciated in that section: "A is driving his car along the highway in a neighborhood with which he is unfamiliar. He asks B to direct him to a certain town. B tells him that he can take a short cut through a private road over which the public is not accustomed to travel which B asserts to be upon his own land but which, in fact, is on the land of C. While driving *carefully* along the road, he runs over D, C's three-year-old child, who *suddenly* dashes out from the bushes which border the road. A is liable to D and to C.

Of course, if the owner or possessor of the land, wilfully, voluntarily, or by negligence, himself brings about the injury to his person, such an injury cannot be said to be consequent upon the trespass to the land, and in that event the trespasser would not be liable therefor: *Clifford v. Metropolitan Life Insurance Company*, 197 Ky. 828, 248 S.W. 180. The question arises, therefore, in the present case whether plaintiff's accident was essentially due to an inexcusable failure on his own part to see the hole for which he was in fact searching. That question, however, was for the jury and cannot be determined as a matter of law. The hole was comparatively small in diameter and, according to his evidence, was in rough ground where there were grass, briars, weeds, vines and spots of snow, interfering, perhaps, with ordinary clearness of vision, especially on a late, cloudy afternoon in the latter part of December.

The verdict rendered in favor of plaintiff was undoubtedly excessive. It appears that he suffered a war injury to his side and left leg which resulted in a 50 per cent disability and for which he is receiving compensation from the Government. In the present accident he claims to have sustained injuries to his right foot and to his back. The foot injury was occasioned by a briar penetrating his shoe and causing a puncture in the sole of the foot; after treatment this injury cleared up entirely in a couple of months leaving but a small scar. The only professional testimony as to the back injury was that of a doctor who examined him five days before the trial, more than two years after the accident, for the purpose, not of treatment, but of testifying. This doctor stated that in his opinion plaintiff had a chronic inflammation of muscles and tissue in the lower part of the back, and an early osteoarthritis. The testimony as to the causal relation between the accident and the arthritic condition was extremely tenuous. Plaintiff received some diathermic treatment

for his back, but his entire medical expenses amounted to $80. He was not hospitalized. His claims for losses occasioned by alleged forced relinquishment of certain activities were open to serious question; ten months before the accident he had signed a statement to the Government that he was unable then to work because of the injury to his leg. On the whole, a verdict in the amount of $7,000 would seem generous compensation for the injuries he sustained, and the verdict should accordingly be reduced to that amount.

As far as the verdict in favor of the additional defendant is concerned, it is clear, from what has previously been stated, that Sedwick, however innocent his act of trespass, incurred thereby the same liability to plaintiff as did the original defendant. However, there has been no appeal by plaintiff from the verdict in Sedwick's favor, nor has defendant ever made any claim on its own behalf against the additional defendant.[5] Therefore the propriety of the verdict in the latter's favor is not here in question.

As modified the judgment is affirmed.

OPINION CONCURRING IN PART AND DISSENTING IN PART BY MR. JUSTICE BELL:

The majority concede that defendant Bell Telephone Company was not guilty of negligence, and that the plaintiff cannot recover on the theory of negligence which was the theory on which the case was actually and admittedly tried and passed upon in the Court below. Nevertheless, they sustain plaintiff's verdict on an entirely different theory, viz., a theory of absolute liability arising out of a non-negligent trespass to land.

[5] Defendant's complaint against the additional defendant claimed merely that the latter was *solely* liable to plaintiff.

In order to reach this startling conclusion, the majority utterly ignore a principle which this Court has iterated over and over again: "... we will not review a case on a theory other than that upon which it was tried and passed upon in the court below: Saxman v. McCormick, 278 Pa. 268, 273, 122 A. 296, and cases there cited; Morrett v. Fire Association of Philadelphia, 265 Pa. 9, 11-12, 108 A. 171, and cases there cited; Quinter v. Quinter, 261 Pa. 195, 198, 104 A. 580, and cases there cited; Rotograph Company v. Cressman, 41 Pa. Superior Ct. 14, 17-18. An appellate court does not sit to review questions that were neither raised, tried nor considered in the trial court: Huffman Estate (No. 3), 349 Pa. 59, 62, 36 A. 2d 640; Henry v. Zurflieh, 203 Pa. 440, 451, 53 A. 243": *Fisher v. Brick,* 358 Pa. 260, 264, 56 A. 2d 213.

The facts further emphasize how especially unjustifiable it is to ignore this principle in this case.

Plaintiff sued the Bell Telephone Company in trespass and claimed damages for injury to his land and for injury to his person which injuries resulted from the entry of Sedwick (who was subsequently joined as additional defendant by Bell Telephone Company) on his property and the digging of an unprotected ditch into which the plaintiff fell. Defendants then filed preliminary objections as to the cause of action for damages to the land; and the Court with the consent of the plaintiff entered an order striking from the complaint "the cause of action for damages to the land", thus formally withdrawing plaintiff's claim for damages to his real estate. Plaintiff admittedly tried his case solely on the theory that the defendants were negligent and their negligence caused his injuries; both defendants presented their defense on lack of negligence on their part and on the contributory negligence of the plaintiff; the trial judge charged the jury on the theory that negligence and contributory negligence were the only

issues in the case (outside of the amount of damages); the jury's verdict was based upon the questions or issues of negligence and contributory negligence. In this Court not only in their original respective paper books, but also in their original oral arguments, the case was presented solely upon the question or issue of whether one or both of the defendants were guilty of negligence and whether plaintiff was guilty of contributory negligence.

During the oral *reargument* one of the Justices advanced the idea that plaintiff could and should have sued and recovered upon the theory of trespass quare clausum fregit. Four times counsel for plaintiff was asked whether he sued in an action or based his claim for damages upon the theory of trespass quare clausum fregit. Four times counsel for plaintiff stated flatly and unequivocally that he did not sue or claim damages under trespass quare clausum fregit but sued for and claimed damages solely upon the theory of the defendant's negligence. Counsel for plaintiff went further and reminded this Court that he had formally abandoned, prior to trial, any and all claim for injury or damage to plaintiff's land. Moreover, counsel for plaintiff in his printed brief on reargument said, ". . . it seems clear that *since our suit was an action in trespass based upon negligence from the beginning,* that there was no attempt, *nor would it be possible to regard the verdict which we obtained as having been based on trespass quare clausum fregit."** To pile Pelion upon Ossa, counsel for each defendant then agreed with plaintiff that the case had been presented, tried, defended, and the jury charged, solely upon the basis or theory or issue of negligence and contributory negligence. The verdict having necessarily been rendered by the jury solely upon that basis, one can imagine the astonish-

---

* Italics throughout, ours.

ment of all counsel in the case and the trial Judge and the jury when they read the majority opinion telling them how they must have and therefore actually did try and decide this case upon an entirely different basis or theory. Does that seem fair or wise or just?

*Federoff v. Harrison Construction Co.*, 362 Pa. 181, 66 A. 2d 817, relied on by the majority to support their position, is clearly distinguishable. In that case plaintiffs pleaded and recovered a verdict of $1,200. for damage to their house caused by defendant's blasting. Plaintiffs pleaded (a) absolute liability for damage resulting from the blasting, as well as (b) negligent blasting, *and presented evidence to support each theory.* Plaintiff's evidence was sufficient to sustain the verdict on the theory of absolute liability, but insufficient to prove negligence. This Court in its opinion said: "The defendant-appellant contends that, as plaintiffs tried to prove negligence, they may not recover without proof of it. *But the case is much broader; plaintiffs also alleged absolute liability, and produced evidence from which the jury found that defendant's blasting damaged their dwelling;* if, in their effort to recover, they went further than was necessary by attempting to prove negligence, as a basis for recovery, the failure to carry that excess of burden does not disqualify them from relying on the principle of absolute liability, the evidence being consistent with that contention . . ." That case is very different from the instant case, which was pleaded, presented *tried* and decided as we have seen, *solely on the theory of negligence* and not on the double-barreled alternative theory of absolute liability for consequential personal injuries arising out of a non-negligent trespass to land, and negligence. A closer analogy and one which is controlling is *Kramer v. Pittsburgh Coal Co.*, 341 Pa. 379, 19 A. 2d 362. Speaking through Mr. Chief Justice SCHAFFER, this Court said (pages 381, 382) : "In the statement of claim plain-

tiff's right of recovery is based entirely upon defend-
ant's negligent operation of a cleaner . . . .

". . . 'At the oral argument [of the motion] plain-
tiff for the first time, took the position that the case
should have been submitted to the jury on the doctrine
of absolute liability.' The opinion points out that it
was then too late for plaintiff to raise this question,
even if there were merit in the contention advanced.
The point could not be raised for the first time in the
motion for a new trial; much less could it be initiated
on the oral argument of that motion: Penna. R. R. Co.
v. Pittsburgh, 335 Pa. 449, 464, 6 A. 2d 907; Weis-
kircher v. Connelly, 256 Pa. 387, 389, 100 A. 965. Plain-
tiff, having stated and tried his case solely as one of
negligence, could not expect to have it passed upon as
one of nuisance [*] generally, irrespective of negli-
gence."

There is still another reason why plaintiff's verdict
cannot be sustained.

An *intentional* entry upon the land of another with-
out invitation or consent constitutes a trespass. The
trespasser's liability is absolute and it is immaterial
whether the trespass was with or without fault or negli-
gence, or that it occurred under an innocent mistake
of fact or under a mistaken belief of law. Cf. *Watson
v. Rynd,* 76 Pa. 59; *Chase v. Clearfield Lumber Co.,*
209 Pa. 422; 58 A. 813; Restatement, Torts, §§163,
164. A person who authorizes or directs another to
commit an act which constitutes a trespass to another's
land is likewise liable for the trespass even though the
actual trespasser be an agent or independent contractor:
*McCloskey v. Powell,* 123 Pa. 62, 73, 74, 16 A. 420; 138
Pa. 383, 397, 21 A. 148; *Allen v. Willard,* 57 Pa. 374,
381.

---

* i.e., absolute liability.

Damages, nominal or otherwise, depending upon the circumstances, may be recovered in an action of trespass quare clausum fregit; but because liability imposes such a severe and heavy burden upon one who may be an innocent trespasser, the damages recoverable have heretofore been limited in Pennsylvania (a) to injury to the land; and (b) to direct, immediate and proximate injuries resulting from the trespass. I believe that this doctrine has been reaffirmed and restated by the majority opinion. But the majority go one step further and rule for the first time in Pennsylvania that the possessor of land may also recover in an action of trespass quare clausum fregit for all indirect and consequential injuries to the person which result from the trespass. With this new or extended doctrine I disagree.

After months of painstaking research, the majority have failed to find one Pennsylvania authority in the entire history of the Commonwealth to support the third branch of this doctrine. While this is not conclusive, it is, especially when we consider the ability and ingenuity of the Pennsylvania Bar, persuasive that trespass quare clausum fregit never in its active lifetime possessed the attributes with which the majority now invest it. The farthest Pennsylvania Courts have ever gone in this respect is the allowance of damages for timber cutting (a direct and immediate injury), and the allowance by a divided Superior Court of damages for the *immediate* injury to a possessor of land from a trespassing cow, and the allowance of damages resulting from the extremely hazardous occupation of blasting.

Absolute liability for damages to land resulting from a non-negligent trespass quare clausum fregit is an ancient and technical concept, which arose from the ancient Anglo-Saxon emphasis on property rights

and the ancient theory that a man's home was his castle and inviolable. Absolute liability is contrary to the modern philosophy of civil responsibility and should be applied only where the principle of stare decisis requires it, or where there is an express statutory direction imposing absolute liability without negligence, as for example under the Workmen's Compensation Act. But the modern trend is undoubtedly and rapidly drifting away from these ancient conceptions which formed the basis for trespass quare clausum fregit. As this Court said in *Summit Hotel Co. v. National Broadcasting Company*, 336 Pa. 182 (pp. 186-7), 8 A. 2d 302: *"In our State, the doctrine of absolute liability has been invoked, almost without exception, only in that small group of actions which redress injuries to land, and it is only as to these that it can be fairly said that the doctrine prevails.* This liability is a survival of the medieval law dictated by the landlord, in which the protection of the uninterrupted enjoyment of real property was a primary consideration.

"In the very earliest times, all rights, real and personal, were probably entitled to absolute protection, and every injury redressed regardless of fault, but a sharp line of distinction has since been marked between liability for injuries to land and injuries to persons . . . .

"In Pennsylvania, the principle of liability without fault for injuries to the person has received scant consideration. The great body of our law of liability for personal injuries is that of liability through fault; liability based almost exclusively on wrongful conduct. . . .

"Illustrating the definite trend of judicial decisions in this State to restrict liability without fault to cases affecting land, and, even there, to narrow its application, we may cite the following cases: . . .

"To summarize, therefore, the cases mentioned, it may be stated that *the doctrine of liability without fault*

*has little or no place in torts involving injuries to the person, and its extension from the law of trespass to land has rarely been looked upon favorably in this State.* In all of the exceptional cases there is a common ground of either antecedent negligence, or the assumption of a known risk of harm to others by intentional conduct . . . ."

I do not believe that the doctrine of trespass quare clausum fregit as it has heretofore existed in Pennsylvania should be extended; nor do I believe that even if it were to be so extended it should be applied in this case after the case was tried by plaintiff and defendants and decided by the jury and by the lower Court and argued originally in this Court solely upon the issue of negligence and contributory negligence.

The jury returned a verdict for the trespasser and a verdict against the nontrespasser—verdicts which the majority term hopelessly inconsistent.

Under the majority's doctrine of *absolute liability* for all damages direct, indirect and consequential which result from a non-negligent trespass, both *defendant Sedwick* and defendant Telephone Company *had an absolute inescapable liability;* and it would seem, under the majority's theory, unjust and improper to sustain the verdict for defendant Sedwick: Cf. *Biehl v. Rafferty,* 349 Pa. 493, 500, 37 A. 2d 729; *Miller v. P.R.R.,* 368 Pa. 507, 515, 84 A. 2d 200; *Nebel v. Burelli,* 352 Pa. 70, 75, 41 A. 2d 873.

The jury returned a verdict for defendant Sedwick either because he was not negligent or because plaintiff was guilty of contributory negligence, or both. It is not difficult to understand this verdict in the light of all the facts and attendant circumstances. Since in my opinion these were the only issues in the case, there was ample evidence to support the verdict of the jury in favor of defendant Sedwick and I would therefore affirm it.

It is difficult, however, to understand how, as the jury found, the defendant Sedwick (whether agent or independent contractor) could be legally free from negligence and the defendant Bell Telephone Company legally guilty of negligence. The majority say "there is no evidence in the record of any negligence on the part of the defendant. . . . had it been necessary to prove negligence on defendant's part, plaintiff's proofs to that end would have been wholly inadequate."

Since this case was pleaded, presented, *tried and decided* in the lower Court solely on the issue of negligence, and since plaintiff failed to prove "negligence", I would reverse the judgment entered against the Bell Telephone Company and here enter in its favor judgment *non obstante veredicto.*

Mr. Justice ALLEN M. STEARNE joins in this opinion.

———

OPINION CONCURRING IN PART AND DISSENTING IN PART BY MR. JUSTICE MUSMANNO:

I concur with the majority opinion with regard to liability of the Bell Telephone Company for the injuries sustained by the plaintiff, but dissent from the decision to lop off $4,000 from the verdict returned by the jury. Expert testimony established that the plaintiff sustained a serious injury to his back and that the pathological condition resulting from that injury will become progressively worse.

The court below, in considering the amount of the verdict, said: "There was evidence in the record to show that plaintiff suffered permanent disability as a result of this accident; that he lost considerable sums of money because he was not able to carry on his mining operations; and that he suffered considerable pain and inconvenience. The award of the jury was for $11,000.00. In the light of the foregoing, we cannot say that

the amount of the verdict shocks the conscience of the court."

$11,000 did not shock the conscience of the court and jury which saw and heard the plaintiff and saw and heard the testimony of all the doctors in the case. How can we then, by a simple reading of the printed page, diagnose with such medical precision and probe with such scientific accuracy, that we can apply the scalpel of appellate absolutism and amputate away what we have no right to touch except under the most extraordinary circumstances which assuredly are not present here? $11,000 as a verdict for the injuries sustained by the plaintiff does not shock my sense of justice, but a needless amputation does.