

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-2005

# Ride the Ducks Phila v. Duck Boat Tours Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2954

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Ride the Ducks Phila v. Duck Boat Tours Inc" (2005). *2005 Decisions*. Paper 897.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/897

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-2954
_____

RIDE THE DUCKS OF PHILADELPHIA, LLC

v.

DUCK BOAT TOURS, INC.,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 04-cv-02804)
District Judge:  The Honorable Legrome D. Davis
_____

Submitted Under Third Circuit LAR 34.1(a)
June 27, 2005

Before: NYGAARD, SMITH, and FISHER, Circuit Judges.

(Filed July 6, 2005)

_____

OPINION OF THE COURT
_____


NYGAARD, Circuit Judge.

Duck Boat Tours, Inc. t/a Super Ducks appeals from the grant of a preliminary injunction by the District Court in favor of Ride The Ducks of Philadelphia, LLC.  We will affirm.

I.

Ride The Ducks, a Missouri corporation, operates a tourist attraction in Philadelphia using amphibious vehicles known as "ducks boats."  These duck boats take tourists on a ride through the historic streets of Philadelphia and then enter the Delaware River via a ramp at the end of Race Street near the Benjamin Franklin Bridge for a water tour.  Ride The Ducks built the ramp pursuant to a ten-year license agreement with Penn's Landing Corporation, a Pennsylvania non-profit corporation empowered by the City of Philadelphia to contract for the redevelopment of the area fronting the Delaware River.  The license states in relevant part:

> Exclusivity: Provided that RTD is not under default hereunder, RTD agrees that during the Term hereof, PLC will not directly enter into an agreement for an amphibious tour boat operation substantially similar to RTD's at Penn's Landing-Stage I or Penn's Landing-Stage II, *and RTD shall be the exclusive user of the ramping system which was constructed as part of RTD's work*.

(App. at A201) (emphasis added).  Ride The Ducks spent approximately $585,000 to build the ramp, and in addition to a $50,000 yearly license fee, Ride The Ducks pays Penn's Landing Corporation a portion of its gross revenues for the right to use the ramp it built.  (Id. at A47).

2

Like Ride The Ducks, Super Ducks, a Pennsylvania corporation, is the owner of a number of duck boats. But unlike Ride The Ducks, Super Ducks has no license agreement with Penn's Landing Corporation for access to the Delaware River. Thus, in order to compete in the Philadelphia amphibious tour market, in early June 2004, Super Ducks sought to negotiate with Ride The Ducks for shared used of the ramp. Ride The Ducks declined. In response, Super Ducks representative T. Milton Street wrote a letter to the Director of Penn's Landing Corporation stating that Super Ducks intended to begin using Ride The Ducks's ramp on June 26, 2004, with or without the consent of Ride The Ducks or Penn's Landing Corporation.

On June 25, 2004, Ride The Ducks filed a motion for a preliminary injunction and a petition for a temporary restraining order. According to Ride The Ducks, Super Ducks' threatened use of the ramp would constitute trespass, conversion, and a tortious interference with the exclusivity provision of the license agreement between itself and Penn's Landing Corporation. The District Court granted the temporary restraining order pending a hearing on the preliminary injunction, which it held on July 1, 2004. The following day, the District Court granted Ride The Ducks's motion, enjoining Super Ducks from using or interfering with Ride The Ducks's ramp into the Delaware River. The District Court agreed with Ride The Ducks that Super Ducks' use of the ramp would be a tortious interference with the license agreement. Super Ducks now appeals.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's decision to grant or deny a motion for a preliminary injunction for abuse of discretion. *E.g., Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). However, its predicate findings of fact are reviewed for clear error and its conclusions of law receive plenary review. *Id*.

III.

In deciding whether to grant a preliminary injunction, a court must consider the following four factors:

> (1) the likelihood that the moving party will succeed on the merits;
> (2) the extent to which the moving party will suffer irreparable harm without injunctive relief;
> (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and
> (4) the public interest.

*Novartis*, 290 F.3d at 586. A balance of these factors leads us to hold that the District Court did not abuse its discretion in granting the preliminary injunction.

*A. Likelihood of Success on the Merits*

Ride The Ducks is likely to succeed on the merits of its tortious interference with contract and trespass claims.[1] We address each in turn.

---

1.      We doubt whether Ride The Ducks could succeed on its conversion claim. In Pennsylvania, conversion occurs when "the defendant deprives the plaintiff of his right to

(continued...)

4

To establish a claim for tortious interference with existing contractual relations under Pennsylvania law Ride The Ducks must demonstrate:

> (1) the existence of a contractual relation between itself and a third party;
> (2) purposeful action on the part of Super Ducks, specifically intended to harm that existing relation;
> (3) the absence of privilege or justification on the part of Super Ducks; and
> (4) actual legal damage as a result of Super Ducks' conduct.

*See Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1998). There is no dispute as to the first element. Ride The Ducks and Penn's Landing Corporation have an existing lease agreement. With regard to the second element, Ride The Ducks can satisfy it as well. Super Ducks knew Ride The Ducks had been granted the right to exclusive use of the ramp by the lease agreement. By seeking to use the ramp, Super Ducks necessarily intended to deprive Ride The Ducks of that right. Thus, Super Ducks' actions were "specifically intended" to hinder performance of the agreement under its written terms

---

1.      (...continued)
a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification." *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2003). Although we cannot say definitively absent a factual determination by the District Court, it does not appear that the ramp is a chattel. It appears instead to be a fixture, which is defined as: "An article in the nature of personal property which has been so annexed to the realty that it is regarded as part of the real property. . . . That which is fixed or attached to something permanently as an appendage, and not removable." BLACK'S LAW DICTIONARY 638 (6th ed. 1990). Pennsylvania does not recognize a cause of action for conversion of fixtures. *Norriton E. Realty Corp. v. Central-Penn Nat'l Bank*, 254 A.2d 637, 638 (Pa. 1969). Therefore, unless Ride The Ducks could demonstrate that the ramp is a chattel and not a fixture, it would not likely succeed on the merits of its conversion claim.

and the second element is satisfied. As for the third element, we hold that Super Ducks has no privilege or justification to interfere with the lease agreement. Finally, Ride The Ducks would be able to prove actual legal damage upon a further determination of the merits. If forced to share the ramp with a competitor, Ride The Ducks would likely lose customers and, in turn, income. Although such injury has not yet occurred, because the purpose of a preliminary injunction is to prevent the occurrence of injuries, the demonstration by Ride The Ducks of a "presently existing actual threat" of injury suffices at this stage of the proceedings. *See Cont'l Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). For these reasons, Ride The Ducks is likely to succeed on the merits of its tortious interference claim.

Ride The Ducks is equally—if not more—likely to prevail on its trespass claim. Under Pennsylvania Law, trespass is an unprivileged, intentional intrusion upon land in possession of another. *Kopka v. Bell Tel. Co.*, 91 A.2d 232, 235 (Pa. 1952). Any attempt by Super Ducks to use the ramp, which, pursuant to the lease agreement, is in the exclusive possession of Ride The Ducks, would constitute trespass. Although Super Ducks protests to the contrary, the fact that Ride The Ducks is a licensee of the ramp is of no consequence. Where an owner of real property would be able to bring an action in trespass, so too may a licensee bring a common law trespass action if the intrusion by a third party disturbs the terms of the license. *Bell Telephone Co. of Pennsylvania v. Baltimore & O.R. Co.*, 38 A.2d 732, 288 (Pa. Super. Ct. 1944). The terms of the license

6

grant Ride The Ducks exclusive use of the ramp. Intrusion by Super Ducks onto the ramp would violate the exclusivity provision of the license. Accordingly, Ride The Ducks has a strong likelihood of success on the merits of its trespass claim.

## B. *Balance of Irreparable Harms*

If forced to share with a competitor the ramp it built with its own funds and for which it continues to pay Penn's Landing Corporation for exclusive use, Ride The Ducks would suffer irreparable harm. Having to share property so vital to its business with a competitor would almost certainly diminish Ride The Ducks's share of the amphibious tour market. We have held in other contexts that the loss of market share may be an irreparable injury. *See Novartis*, 290 F.3d at 596. We see no reason not to apply that rule here. By contrast, Super Ducks asserts that it has "expended considerable sums in acquiring state-of-the-art amphibious crafts" and would be unable to compete in the Philadelphia market without access to the Delaware River via the ramp, which is located in a historic area. (Br. at 23). To the extent such harm is irremediable, it must be discounted by the fact that Super Ducks has brought the harm upon itself. *See Novartis*, 290 F.3d at 596 (holding that "the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought the injury upon itself"). That Super Ducks would be enjoined from invading Ride The Ducks's property without consent cannot weigh in favor of Super Ducks. Nor can the fact that it improvidently purchased duck boats without the means to put them in the water at a desirable location.

The balance of irreparable harms therefore favors Ride The Ducks. In this regard we also find significant Ride The Ducks's strong likelihood of success on the merits. Indeed, "'[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor.'" *Id*. at 597 (quoting *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1568 (7th Cir. 1996)).

### C. The Public Interest

The public interest favors Ride The Ducks as well. The public has a strong interest in seeing that contract and property rights are respected. Ride The Ducks and Penn's Landing Corporation entered into a license agreement under which Ride The Ducks received the right to exclusive possession of the ramp as a licensee. We see no reason why, having fulfilled its contractual duties, Ride The Ducks is not entitled to enforce the benefit of its bargain. Certainly, the public would be well-served by a rule enforcing the rights conferred by lawful contracts for the use of real property. Those rights, of course, may include the right to exclusive possession, which after all, is at the very core of the concept of ownership.

### D. Summary

Review of the four-factor preliminary injunction test compels the conclusion that the District Court did not abuse its discretion by granting the preliminary injunction. Ride The Ducks is likely to succeed on the merits of its claims for tortious interference with contract and trespass. If forced to share the ramp it built, Ride The

8

Ducks would suffer irreparable harm in the form of a loss of market share. On the other hand, any irreparable harm to Super Ducks is of its own doing. And, finally, the public interest favors enforcing the property and contractual rights of Ride The Ducks.

## IV.

Parties who enter into lawful contracts are entitled to the rights conferred upon them. Similarly, owners of private property may generally prevent individuals from using their property without consent. Super Ducks' intended use of the ramp contravenes these fundamental notions, which strike at the very heart of both contract and property law. We decline to now brush aside these deeply-ingrained principles of law as easily as Super Ducks would have us do: like water off a duck's back. The District Court did not abuse its discretion in granting Ride The Ducks's motion for a preliminary injunction. We will affirm.

_____